# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE SINGH, GWEN DEJESUS, JOSHUA ALLEN, RAUL MORALES, ADRIAN BARRERA, JR., CLAIRE MOORE, PATRICE JOHNSON, NIJA WINTER, and MICHAEL SUTTON, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, THE BOARD OF DIRECTORS OF CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE FINANCIAL CORPORATION INVESTMENT COMMITTEE and JOHN DOES 1-30,<br><br>                Defendants. | **CIVIL ACTION NO.:** _____<br><br>**CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT

Plaintiff, Stephanie Singh, Gwen DeJesus, Joshua Allen, Raul Morales, Adrian Barrera, Jr., Claire Moore, Patrice Johnson, Nija Winter, and Michael Sutton ("Plaintiffs"), by and through their attorneys, on behalf of the Capital One Financial Corporation Associate Savings Plan (the "Plan"),[1] themselves and all others similarly situated, state and allege as follows:

## I.    INTRODUCTION

1.    This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries, which include Capital One Financial Corporation ("Capital One" or

---

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

"Company") and the Board of Directors of Capital One Financial Corporation and its members during the Class Period[2] ("Board") and the Capital One Financial Corporation Investment Committee and its members during the Class Period ("Committee") for breaches of their fiduciary duties.

2.      To safeguard Plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope, *Glass Dimensions, Inc. v. State Street Bank & Trust Co.,* 931 F. Supp.2d 296, 305 (D. Mass 2013). 29 U.S.C. § 1104(a)(1)(B). These twin fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F. 2d 263, 272 n.8 (2d Cir. 1982); *see also Severstal Wheeling v. WPN Corporation*, 659 F.Appx. 24 (2nd Cir. 2016).

3.      Plaintiffs allege that during the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties they owed to the Plan, to Plaintiffs, and to the other participants of the Plan by failing to defray[] reasonable expenses of administering the [Plan]. 29 U.S.C. § 1104(a)(A)(ii). Their failure stems from the use of Plan participant forfeited funds to reduce Company contributions to the Plan instead of using the funds to reduce or eliminate the amounts charged to Plan participants for Plan administrative costs. This action by the Company was a clear breach of the duties of prudence and loyalty to Plan participants and cost Plan participants millions of dollars.

4.       Defendants' mismanagement of the Plan, to the detriment of participants and beneficiaries, constitutes a breach of the fiduciary duty of prudence, in violation of 29 U.S.C. §

---

[2] As will be discussed in detail below, the Class Period, is defined as November 11, 2018 through the date of judgment ("Class Period").

1104. Their actions were contrary to actions of a reasonable fiduciary and cost the Plan and its participants millions of dollars.

5.      Based on this conduct, Plaintiffs assert claims against Defendants for breach of the fiduciary duty of prudence (Count I), breach of the fiduciary duty of loyalty (Count II), breach of ERISA's Anti-Inurement Provision (Count III) and failure to monitor fiduciaries (Count IV).

## II.    JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

7.      This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff, Stephanie Singh resides in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.   PARTIES

### Plaintiff

9.      Plaintiff, Stephanie Singh ("Singh"), resides in Ozone Park, NJ. During her employment, Plaintiff Singh participated in the Plan paying fees associated with her Plan account. Plaintiff Singh suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff Singh's individual account.

10.     Plaintiff, Gwen DeJesus ("DeJesus"), resides in Chesapeake, VA. During her employment, Plaintiff DeJesus participated in the Plan paying fees associated with her Plan

account. Plaintiff DeJesus suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff DeJesus' individual account.

11.    Plaintiff, Joshua Allen ("Allen"), resides in Tulsa, OK. During his employment, Plaintiff Allen participated in the Plan paying fees associated with his Plan account. Plaintiff Allen suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff Allen's individual account.

12.    Plaintiff, Raul Morales ("Morales"), resides in Henrico, VA. During his employment, Plaintiff Morales participated in the Plan paying fees associated with his Plan account. Plaintiff Morales suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff Morales' individual account.

13.    Plaintiff, Adrian Barrera, Jr. ("Barrera"), resides in Dallas, TX. During his employment, Plaintiff Barrera participated in the Plan paying fees associated with his Plan account. Plaintiff Barrera suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff Barrera's individual account.

14.    Plaintiff, Claire Moore ("Moore"), resides in New Orleans, LA. During her employment, Plaintiff Moore participated in the Plan paying fees associated with her Plan account. Plaintiff Moore suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff Moore's individual account.

15.    Plaintiff, Patrice Johnson ("Johnson"), resides in Baker, LA. During her employment, Plaintiff Johnson participated in the Plan paying fees associated with her Plan

account. Plaintiff Johnson suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff Johnson's individual account.

16.    Plaintiff, Nija Winter ("Winter"), resides in Richmond, VA. During her employment, Plaintiff Winter participated in the Plan paying fees associated with her Plan account. Plaintiff Winter suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff Winter's individual account.

17.    Plaintiff, Michael Sutton ("Sutton"), resides in Winter Garden, FL. During his employment, Plaintiff Sutton participated in the Plan paying fees associated with his Plan account. Plaintiff Sutton suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses, would have reduced or eliminated the amounts charged to Plaintiff Sutton's individual account.

18.    Plaintiffs have standing to bring this action on behalf of the Plan because they participated in the Plan and were injured by Defendants' unlawful conduct. Plaintiffs are entitled to receive benefits in the amount of the difference between the value of their accounts currently, or as of the time their accounts were distributed, and what their accounts are or would have been worth, but for Defendants' breaches of fiduciary duties as described herein.

19.    Plaintiffs did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

### Defendants

#### Company Defendant

20.    Capital One is the Plan sponsor and a named fiduciary for the Plan. Capital One describes itself as being on "a mission to help our customers succeed by bringing ingenuity,

simplicity, and humanity to banking. We were founded on the belief that the banking industry would be revolutionized by information and technology, beginning with credit cards."[3]

21.    Capital One appointed the Committee to, among other things, administer the Plan. *See* Capital One Financial Corporation Associate Savings Plan as Amended and Restated effective January 1, 2015 ("Plan Doc.") at 74 ("The Benefits Committee or its delegate shall have responsibility and authority to take all action and to make all decisions necessary or proper to carry out the Plan."). As will be discussed below, the Committee fell well short of these fiduciary goals. Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

22.    Accordingly, Capital One during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had a duty to monitor the actions of the Committee.

23.    For the foregoing reasons, the Company is a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

**Board Defendants**

24.    Capital One, acting through its Board of Directors, appointed the Committee to, among other things, administer the Plan. *See* Plan Doc. at 97 ("the Benefits Committee or its delegate is authorized by the Board to make any amendments to the Plan that the Benefits Committee or its delegate, in its sole discretion, deems appropriate or necessary in the administration or operation of the Plan."). Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

25.    Accordingly, each member of the Board during the putative Class Period (referred to herein as John Does 1-10) is/was a fiduciary of the Plan, within the meaning of ERISA Section

---

[3]    https://www.capitalone.com/about/corporate-information/our-company/    last    accessed    on October 22, 2024.

3(21)(A), 29 U.S.C. § 1002(21)(A) because each had a duty to monitor the actions of the Committee.

26.    The Board and the unnamed members of the Board during the Class Period (referred to herein as John Does 1-10), are collectively referred to herein as the "Board Defendants."

### Committee Defendants

27.    As discussed above, Capital One and the Board appointed the Committee to, among other things, administer the Plan. Plan Doc. at 74, 97.

28.    The Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because each exercised discretionary authority over management or disposition of Plan assets.

29.    The Committee and unnamed members of the Committee during the Class Period (referred to herein as John Does 11-20), are collectively referred to herein as the "Committee Defendants."

### Additional John Doe Defendants

30.    To the extent that there are additional officers, employees and/or contractors of Capital One who are/were fiduciaries of the Plan during the Class Period, the identities of whom are currently unknown to Plaintiffs, Plaintiffs reserve the right, once their identities are ascertained, to seek leave to join them to the instant action. Thus, without limitation, unknown "John Doe" Defendants 21-30 include, but are not limited to, Capital One officers, employees and/or contractors who are/were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) during the Class Period.

## IV.    CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed class ("Class"):[4]

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between November 11, 2018 through the date of judgment (the "Class Period").

32.    The members of the Class are so numerous that joinder of all members is impractical. The 2023 Form 5500 lists 66,626 Plan "participants with account balances as of the end of the plan year." 2023 Form 5500 at 2.

33.    Plaintiffs' claims are typical of the claims of the members of the Class. Like other Class members, Plaintiffs participated in the Plan and suffered injuries as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiffs consistently with other Class members and managed the Plan as a single entity. Plaintiffs' claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

34.    There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

> A.    Whether Defendants are/were fiduciaries of the Plan;
>
> B.    Whether Defendants breached their fiduciary duties of loyalty and prudence by engaging in the conduct described herein;

---

[4] Plaintiff reserves the right to propose other or additional classes or subclasses in his motion for class certification or subsequent pleadings in this action.

C.    Whether the Company and Board Defendants failed to adequately monitor the Committee and other fiduciaries to ensure the Plan was being managed in compliance with ERISA;

D.    The proper form of equitable and injunctive relief; and

E.    The proper measure of monetary relief.

35.    Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

36.    This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

37.    In the alternative, certification under Rule 23(b)(2) is warranted because the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## V.    THE PLAN

38.    Capital One established the Plan to "reward [employees] for the value [they] bring to Capital One, and provides a way for [them] to plan and save for [their] financial future."

Summary Plan Description for Capital One Financial Corporation Associate Savings Plan ("SPD") at 4. As will be discussed below, the Plan has been hindered in fulfilling its purpose by the fiduciary breaches of the Defendants.

39.    The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each participant and for benefits based solely upon the amount contributed to those accounts, and any income, expense, gains and losses, and any forfeitures of accounts of the participants which may be allocated to such participant's account. *See* Plan Doc. at 31; *see also* Report of Independent Registered Public Accounting Firm ("Independent Auditor's Report") attached to 2023 Form 5500 at 4 ("The Plan is a defined contribution plan covering all employees of the Company who are age 18 or older"). Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account. *See* Plan Doc. at 31.

### *Eligibility*

40.    In general, employees are automatically enrolled in the Plan: "following the latest of (i) the date the Employee commences employment as an Employee, (ii) the date the Employee attains age 18, (iii) the date an Employee who is an Ineligible Employee no longer is an Ineligible Employee, and (iv) January 1, 2018." Plan Doc. at 15; *see also* Independent Auditor's Report attached to 2023 Form 5500 at 4 ("Eligible employees are automatically enrolled in the Plan immediately upon hire unless they elect to opt-out of Plan participation.").

41.    An "ineligible employee" is defined as:

An Employee (i) who is covered by a collective bargaining agreement that does not provide for his participation in the Plan, (ii) who is hired outside the United States by an Employer primarily to perform functions with respect to operations of the Employer maintained outside the United States, (iii) who is a "leased employee" (within the meaning of Code Section 414(n) or because such person is classified by the Employer as a leased employee), (iv) who is classified by the Employer as a temporary employee (including, without limitation, a summer intern or a cooperative education

employee), or (v) who, for any reason, at any time, does not meet the requirements of Section 2.1 for participation.

Plan Doc. at 8.

### *Contributions*

42.     There are several types of contributions that can be added to a participant's account, including: an employee salary deferral contribution, an employee Roth 401(k) contribution, an employee after-tax contribution, catch-up contributions for employees aged 50 and over, rollover contributions, discretionary profit sharing contributions and employer matching contributions based on employee pre-tax, Roth 401(k), and employee after-tax contributions. *See* Plan Doc. at 19-20.

43.     With regard to employee contributions, participants may designate a percentage of his/her pre-tax compensation to the Plan. *See* Plan Doc. at 19 ("The designated percentage may be from 1% to 50% of the Participant's Compensation in whole percentages of Compensation."); *see also* Independent Auditor's Report attached to 2023 Form 5500 at 4 ("Under the Plan, participants can elect to make annual pre-tax and Roth contributions of no more than 50% of their eligible compensation, subject to Internal Revenue Service ("IRS") limitations.").

44.     The Plan also provides for employer matching contributions.

45.     With regard to employer matching contributions made by Capital One, "the Employer shall make a contribution to each Participant's Employer Matching Contributions Account in an amount equal to 100% of that portion of the Participant's Before-Tax Contributions and Roth Contributions . . . for the payroll period that does not exceed in the aggregate 3% of the Participant's Compensation for such payroll period and 50% of that portion of the Participant's Before-Tax Contributions and Roth Contributions . . . for the payroll period that are between 3% and 6% of the Participant's compensation for such payroll period." Plan Doc. at 20; *see also* Independent Auditor's Report attached to 2023 Form 5500 at 4 ("The Company makes non-

elective contributions to each eligible associate's account and matches a portion of associate contributions. The Company's contributions, which provide for a maximum annual Company contribution of up to 7.5% of eligible compensation, consist of two major components: (1) a basic safe-harbor non-elective contribution and (2) Company matching contribution.").

46.     Like other companies that sponsor 401(k) plans for their employees, Capital One enjoys both direct and indirect benefits by providing matching contributions to Plan participants. Employers are generally permitted to take tax deductions for their contributions to 401(k) plans at the time when the contributions are made. *See generally,* https://www.irs.gov/retirement-plans/plan-sponsor/401k-plan-overview.

47.     Capital One also benefits in other ways from the Plan's matching program. It is well-known that "[o]ffering retirement plans can help in employers' efforts to attract new employees and reduce turnover." *See,* https://www.paychex.com/articles/employee-benefits/employer-matching-401k-benefits.

48.     Given the size of the Plan, Capital One likely enjoyed significant tax and cost savings from offering a match.

49.     The Plan also provides for employer supplemental basic contributions. *See* Plan Doc. at 24 ("The Employer shall as soon as practicable following the end of each payroll period allocate to the Employer Supplemental Basic Contributions Account. . .").

50.     The supplemental basic contributions are in addition to the employer nonelective basic contributions and matching contributions. *Id.*

***Vesting***

51.     With regard to contributions made by a participant to the Plan, the "[p]articipant is always fully vested in his Before-Tax Contributions Account, Roth Contributions Account, After-Tax Contributions Account, Catch-up Contributions Account, Rollover Account, and Roth Rollover Contributions Account." Plan Doc. at 49.

52.     Further, the "[p]articipant is always fully vested in Employer Nonelective Basic Contributions made with respect to contributions made for Plan Years beginning on or after January 1, 2004." *Id.*

53.     With regard to employer matching contributions and employer supplemental basic contributions, participants become 100% vested after two years of service. *See* Plan Doc. at 48.

54.     Notwithstanding the two years of service requirement, a participant will become fully vested in the employer matching contributions and employer supplemental basic contributions upon: "(i) his[/her] 65th birthday; (ii) his[/her] death; or (iii) his[/her] Total Disability." *Id.*

### *Trust Fund*

55.     In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

56.     Throughout the Class Period, the Plan's assets were held in a trust fund administered by Fidelity Management Trust Company. *See* Trust Agreement, dated April 1, 2019 at 127 (Capital One "wishes to continue, pursuant to the provisions of this trust agreement . . . a single trust . . . to hold and invest assets of the Plan.").

57.     "The Trust shall consist of . . . all investments made therewith and proceeds thereof, and . . . all earnings and profits thereon, less the payments that are made by Trustee." *Id.*

58.     Further, "no part of the Trust may be used for, or diverted to, purposes other than the exclusive benefit of the Participants in the Plan or their beneficiaries or the reasonable expenses of Plan administration. No assets of the Plan shall revert to Sponsor, except as specifically permitted by the terms of the Plan." *Id.* at 128.

*Forfeited Accounts*

59.     "Except as provided in Subsection (b)(ii),[5] all amounts forfeited under the Plan *shall first be used to pay costs of Plan administration as provided in Section 13.1*, and next to reduce and be considered part of Employer Matching Contributions, Employer Supplemental Basic Contributions, or Employer Nonelective Basic Contributions and/or part of any other Employer special contribution necessary to make any type of corrections described in Section 13.15, for the Plan Year in which the forfeiture occurs (and subsequent Plan Years, as necessary)." Plan Doc. at 52 (emphasis added).

60.     The costs of Plan administration defined in section 13.1 of the Plan Doc. is "[a]ny reasonable expense that is paid or incurred by the Company or by the Trust Fund during a Plan Year *in connection with maintaining and administering the Plan*, including compensation and other expenses and charges of any counsel, accountant, specialist or other person who shall be employed by the Benefits Committee in connection with the administration thereof, shall be paid from the Trust Fund unless it is paid by the Company." Plan Doc. at 107 (emphasis added).

*The Plan's Investments*

61.     The Plan's assets under management for all funds as of December 31, 2023 was $10,193,588,677. *See* Schedule H, attached to 2023 Form 5500 at 2.

*Payment of Plan Expenses*

62.     "Any reasonable expense that is paid or incurred by the Company or by the Trust Fund during a Plan Year in connection with maintaining and administering the Plan, including compensation and other expenses and charges of any counsel, accountant, specialist or other

---

[5] Section (b)(ii) states, "If a Participant separates from Service before he has a 100% vested interest . . . and is subsequently reemployed by the Employer, the amount that the Participant previously forfeited shall be restored to his Accounts if the Participant repays the amount distributed, as follows: . . . (ii) The Employer shall restore the forfeiture by making an allocation of forfeitures to the Participant's Account and, if necessary, making an additional contribution for the Plan Year in which the restoration occurs." Plan Doc. at 51.

person who shall be employed by the Benefits Committee in connection with the administration thereof, shall be paid from the Trust Fund unless it is paid by the Company." Plan Doc. at 107; s*ee also* SPD at 33 ("No amendment to or termination of the plan will reduce the rights of any participant or beneficiary to benefits already earned, allow the return of the plans assets to the company, ***or allow the use of the plans assets for any purpose other than for the exclusive benefit of [P]lan participants*** (Plan assets may be used, however, to help defray reasonable administrative expenses of the plan).") (emphasis added).

## VI.    THE COMPANY IMPROPERLY REDUCED ITS PLAN CONTRIBUTIONS THROUGH FORFEITED ACCOUNTS

63.    During the Class Period, Defendants breached their ERISA fiduciary duties by misusing the Plan's assets for Defendants' own benefit and to the detriment of Plan participants.

64.    As explained above, any employee contributions which do not vest are forfeited.

65.    Against the language of the Plan documents and in violation of their duties to Plan participants, Defendants have improperly used forfeited, non-vested Plan assets since at least the beginning of the Class Period for the Company's own benefit to reduce future Company contributions instead of using the funds to benefit Plan participants by paying Plan administrative expenses.

66.    According to information from the Plan's Form 5500s, the following represents the balance in the Plan's forfeiture accounts during the Class Period, the amount of the forfeiture improperly used to offset Capital One's contributions to the Plan, and the amounts used to pay for Plan administration costs:

| Plan Year | Forfeiture Account | Offset Contributions | Offset Plan Admin. Costs |
|---|---|---|---|
| 2018 | $6,447,178 | $5,007,153 | $257,619 |
| 2019 | $5,973,881 | $7,017,553 | $269,794 |
| 2020 | $5,640,670 | $7,029,375 | $128,171 |
| 2021 | $7,384,902 | $7,501,131 | $0 |
| 2022 | $6,475,033 | $8,549,833 | $0 |
| 2023 | $11,942,378 | $7,545,018 | $0 |
| **Total** | | **$42,650,063** | **$655,584** |

67.     Based on the above chart, from the beginning of the Class Period through 2023, over $42 million was improperly steered from paying Plan administrative costs and instead used to benefit the Company.

68.     Defendants, at their own discretion, effectively placed their own interests above the interests of the Plan and its participants and caused harm to the Plan and its participants by reducing Plan assets, not allocating forfeited funds to Plan participants' accounts, and also caused Plan participants to incur at least $42 million in expenses that could otherwise have been covered in whole or in part by forfeited funds.

## COUNT I
### Breaches of Fiduciary Duties of Prudence
### (Asserted against the Committee)

69.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

70.     At all relevant times, the Committee and its members during the Class Period ("Prudence Defendants") were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

71.     As fiduciaries of the Plan, these Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the

assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

72.    The Prudence Defendants breached these fiduciary duties as discussed throughout this Complaint such as failing to comply with the Plan documents and making decisions regarding the use of the Plan's forfeiture accounts.

73.    The failure to engage in an appropriate and prudent process resulted in saddling the Plan and its participants with excessive Plan administration costs.

74.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan and its participants suffered millions of dollars of losses due to the failure to utilize forfeited accounts to pay Plan expenses. Had Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

75.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Prudence Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

76.    The Prudence Defendants knowingly participated in each breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own duties, and knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT II
### Breach of Fiduciary Duty of Loyalty
### (Asserted against Capital One, the Committee and Board Defendants)

77.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

78.    At all relevant times, the Company, the Committee and its members during the Class Period, and the Board and its members during the Class Period ("Loyalty Defendants") were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

79.    As fiduciaries of the Plan, these Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

80.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), the Loyalty Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

81.    The Loyalty Defendants failed to exercise their duty of loyalty to the Plan and its participants by utilizing forfeited funds in the Plan for the benefit of the Company instead of the sole interest of the Plan participants and beneficiaries.

82.    The Loyalty Defendants used these Plan assets for the purpose of reducing the Company's own contributions to the Plan, thereby saving the Company millions of dollars each year at the expense of the Plan, which received decreased Company contributions, and its participants and beneficiaries were forced to incur avoidable expense deductions to their individual accounts.

83.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses.

84.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Loyalty Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

85.     Each Loyalty Defendant is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT III
## Breach of ERISA's Anti-Inurement Provision
## (Asserted against Capital One and the Board Defendants)

86.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

87.     Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

88.     Because all forfeited Plan participant funds are initially placed in the Plan's trust, these forfeited funds are Plan assets.

89.     The Companies' use of the forfeited funds to defray its own contributions to the Plan in order to save itself millions of dollars in funds that the Company would otherwise have to contribute to the Plan, caused the assets of the Plan to inure to the benefit of the Company in violation of 29 U.S.C. § 1103(c)(1).

90.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Loyalty Defendants are liable to restore to the Plan all losses caused by their breaches of ERISA's anti-inurement provision, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

91.    Each Loyalty Defendant is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

**COUNT IV**
**Failure to Adequately Monitor Other Fiduciaries**
**(Asserted against Capital One and the Board Defendants)**

92.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

93.    Capital One and the Board (the "Monitoring Defendants") had the authority to appoint and remove members of the Committee, and the duty to monitor the Committee and were aware that the Committee Defendants had critical responsibilities as fiduciaries of the Plan.

94.    In light of this authority, the Monitoring Defendants had a duty to monitor the Committee Defendants to ensure that the Committee Defendants were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Committee Defendants were not fulfilling those duties.

95.    The Monitoring Defendants also had a duty to ensure that the Committee Defendants possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's investments; and reported regularly to the Monitoring Defendants.

96.    The Monitoring Defendants breached their fiduciary monitoring duties by, among other things:

(a)    Failing to monitor and evaluate the performance of the Committee Defendants or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Committee Defendants' imprudent actions and omissions; and

20

(b)      failing to remove Committee members whose performance was inadequate in that they continued to engage in conduct that benefited the Company, to the detriment of the Plan and Plan participants' retirement savings.

97.      As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars of losses. Had the Monitoring Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

98.      Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Monitoring Defendants are liable to restore to the Plan all losses caused by their failure to adequately monitor the Committee Defendants. In addition, Plaintiff is entitled to equitable relief and other appropriate relief as set forth in their Prayer for Relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.      A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B.      Designation of Plaintiff as Class Representatives and designation of Plaintiff's counsel as Class Counsel;

C.      A Declaration that the Defendants, and each of them, have breached their fiduciary duties under ERISA;

D.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all profits the Defendants made through use of the Plan's

assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.      An order requiring the Company Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against the Company Defendant as necessary to effectuate said relief, and to prevent the Company Defendant's unjust enrichment;

F.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.      An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

H.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan's fiduciaries deemed to have breached their fiduciary duties;

I.      An award of pre-judgment interest;

J.      An award of costs pursuant to 29 U.S.C. § 1132(g);

K.      An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L.      Such other and further relief as the Court deems equitable and just.

Dated:  November 11, 2024                 Respectfully submitted,

                                          **CAPOZZI ADLER, P.C.**

                                          /s/ *Mark K. Gyandoh, Esq.*
                                          Mark K. Gyandoh, Esquire
                                          PA Attorney ID #88587
                                          James A. Maro, Esquire
                                          PA Attorney ID #86420
                                          (*Admissions Pro Hac Vice to be Requested*)
                                          312 Old Lancaster Road
                                          Merion Station, PA 19066
                                          Telephone: (610) 890-0200
                                          Facsimile: (717) 233-4103
                                          Email: markg@capozziadler.com
                                                   jamesm@capozziadler.com

                                          *Counsel for Plaintiffs and the Putative Class*