UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE SINGH, GWEN DEJESUS, JOSHUA ALLEN, RAUL MORALES, ADRIAN BARRERA, JR., CLAIRE MOORE, PATRICE JOHNSON, NIJA WINTER, and MICHAEL SUTTON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CAPITAL ONE FINANCIAL CORPORATION, THE BOARD OF DIRECTORS OF CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE FINANCIAL CORPORATION INVESTMENT COMMITTEE and JOHN DOES 1-30, <br><br> Defendants. | Case No. 1:24-cv-08538-MMG <br><br> *Electronically filed* <br><br> ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**MORGAN, LEWIS & BOCKIUS LLP**
Jeremy Blumenfeld
Gina McGuire
101 Park Avenue
New York, NY  10178
T: 212.309.6000
F: 212.309.6001
E: jeremy.blumenfeld@morganlewis.com
E: gina.mcguire@morganlewis.com
                        - and -
Tyler J. Hill
1717 Main Street, Suite 3200
Dallas, TX  75201
T: 214.466.4000
F: 214.466.4001
E: tyler.j.hill@morganlewis.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT ........................................................................................................................... 7

I.    Res Judicata Mandates Dismissal of Plaintiffs' Claims on Behalf of the Plan That "Could Have Been" Brought in a Prior ERISA Class Action Lawsuit Filed Against Capital One. ........................................................................ 7

    A.    Final Judgment on the Merits. ................................................................. 8

    B.    Identity or Privity of Parties. ................................................................... 8

    C.    Identity of Claims in the Two Actions. ................................................... 9

II.    ERISA Does Not Require Increasing Plaintiffs' Benefit Under the Plan. ........... 12

III.    Plaintiffs' Claims Are Foreclosed by Decades of Settled Law That Permits Using Forfeitures to Provide Benefits to Other Plan Participants. ..................... 15

    A.    Congressional and Regulatory Background. ........................................... 15

    B.    Plaintiffs' Theory Is Implausible Under This Established Law. .............. 19

IV.    The Complaint Additionally Must Be Dismissed Because It Does Not Allege That Capital One Acted as a Fiduciary With Respect to Forfeitures. ...... 20

V.    Plaintiffs Fail to State a Violation of the Anti-Inurement Clause. ...................... 22

VI.    Plaintiffs Fail to Plausibly Allege a "Failure to Monitor" Claim. ...................... 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abe v. N.Y. Univ.*,
  No. 14-cv-9323 (RJS), 2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016)....................................4

*Adams v. IBM Pers. Pension Plan*,
  533 F. Supp. 2d 342 (S.D.N.Y. 2000).......................................................................................9

*Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*,
  953 F.2d 587 (11th Cir. 1992).................................................................................................22

*Alfarone v. Bernie Wolff Constr.*,
  788 F.2d 76 (2d Cir. 1986).........................................................................................................4

*In re Am. Express Co. ERISA Litig.*,
  762 F. Supp. 2d 614 (S.D.N.Y. 2010).....................................................................................13

*Andrews-Clarke v. Lucent Techs., Inc.*,
  157 F. Supp. 2d 93 (D. Mass. 2001) .......................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................6

*Bennett v. Conrail Matched Sav. Plan Admin. Comm.*,
  168 F.3d 671 (3d Cir. 1999).....................................................................................................21

*Burgio & Campofelice, Inc. v. N.Y. State Dep't of Lab.*,
  107 F.3d 1000 (2d Cir. 1997)...................................................................................................13

*Cameron v. Church*,
  253 F. Supp. 2d 611 (S.D.N.Y. 2003).......................................................................................8

*Cedeno v. Sasson*,
  100 F.4th 386 (2d Cir. 2024) .....................................................................................................8

*Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
  56 F.3d 359 (2d Cir. 1995).........................................................................................................9

*CFTC v. Schor*,
  478 U.S. 833 (1986).................................................................................................................19

*Christensen v. Harris County*,
  529 U.S. 576 (2000).................................................................................................................20

*Conan Nado, et al v. John Muir Health, et al*,
  Case No. 3:24-cv-01632-AMO (N.D. Cal. Mar. 15, 2024) ....................................................11

*Cook v. Unisys Fed. Gov't, Grp.*,
  No. 7:14–cv–579, 2015 WL 5690928 (W.D. Va. Sept. 3, 2015) ..............................................9

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
  990 F.3d 173 (2d Cir. 2021)......................................................................................................8

*Coulter v. Morgan Stanley & Co., Inc.*,
  753 F.3d 361 (2d Cir. 2014)................................................................................................20, 21

*Curtiss-Wright Corp. v. Schoonejongen*,
  514 U.S. 73 (1995)....................................................................................................................21

*Devlin v. Empire Blue Cross AND Blue Shield*,
  274 F.3d 76 (2d Cir. 2001)........................................................................................................11

*Dimou v. Thermo Fisher Sci. Inc.*,
  No.: 23-CV-1732 TWR (JLB), 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) ...............15, 23

*Doe 1 v. Express Scripts, Inc.*,
  837 F. App'x 44 (2d Cir. 2020) ................................................................................................20

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015)..................................................................................................................19

*Feifer v. Prudential Ins. Co. of Am.*,
  306 F.3d 1202 (2d Cir. 2002)....................................................................................................11

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)................................................................................................................3, 6

*Fischer v. Brushy Mountain Bee Farm, Inc.*,
  No. 17-CV-10094 (PAE) (OTW), 2019 WL 935957 (S.D.N.Y. Feb. 26, 2019).......................9

*Flanigan v. Gen. Elec. Co.*,
  242 F.3d 78 (2d Cir. 2001)........................................................................................................22

*Haberern v. Kaupp Vascular Surgeons Ltd.*,
  24 F.3d 1491 (3d Cir. 1994)......................................................................................................14

*Hall v. Cap. One Fin. Corp.*,
  No. 1:22-cv-00857-MSN-JFA, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)................. *passim*

*Hall v. Cap. One Fin. Corp.*,
  No. 22-cv-00857 (E.D. Va. Dec. 15, 2022) ..............................................................2, 5, 8, 12

*HMI Mech. Sys. v. McGowan*,
    266 F.3d 142 (2d Cir. 2001)..................................................................13

*Holliday v. Xerox Corp.*,
    732 F.2d 548 (6th Cir. 1984) ...............................................................23

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)................................................................... *passim*

*Hutchins v. HP Inc.*,
    No. 23-cv-05875-BLF, 2024 WL 3049456 (N.D. Cal. June 17, 2024).....................14, 15, 23

*Jander v. Int'l Bus. Machines Corp.*,
    205 F. Supp. 3d 538 (S.D.N.Y. 2016).....................................................25

*John Fumich, et al v. Novo Nordisk Inc., et al*,
    Case No. 3:24-cv-09158 (D.N.J. Sept. 13, 2024) ...................................11

*Kamdem-Ouaffo v. Pepsico, Inc.*,
    160 F. Supp. 3d 553 (S.D.N.Y. 2016).................................................11, 12

*Krohnengold v. N.Y. Life Ins. Co.*,
    No. 21-CV-1778 (JMF), 2022 WL 3227812 (S.D.N.Y. Aug. 10, 2022)........................22, 23

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)..........................................................................3, 21

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ...............................................................13

*Luciano Barragan v. Honeywell Int'l Inc.*,
    No. 24cv4529 (EP) (JRA), 2024 WL 5165330 (D.N.J. Dec. 19, 2024) ................23

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
    590 U.S. 405 (2020)..........................................................................2, 10

*Maez v. Mountain States Tel. & Tel., Inc.*,
    54 F.3d 1488 (10th Cir. 1995) .............................................................23

*Magi XXI, Inc. v. Stato Della Cita Del Vaticano*,
    22 F. Supp. 3d 195 (E.D.N.Y. 2014) .....................................................10

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*,
    779 F.3d 102 (2d Cir. 2015)....................................................................7

*McBride v. Microdot Salaried Emps. Pension Plan*,
    No. 88–7382, 1989 WL 107023 (E.D. Pa. Sept. 12, 1989) ......................19

*McManus v. Clorox Co.*,
   No. 4:23-CV-05325-YGR, 2024 WL 4944363 ........................................................18, 19, 23

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993)..............................................................................................................19

*Michaelesco v. Est. of Richard*,
   355 F. App'x. 572 (2d Cir. 2009) ..........................................................................................7

*Mitchell v. Nat'l Broad. Co.*,
   553 F.2d 265 (2d Cir. 1977)...................................................................................................8

*Monahan v. N.Y.C. Dep't of Corr.*,
   214 F.3d 275 (2d Cir. 2000)...................................................................................................7

*Morse v. Stanley*,
   732 F.2d 1139 (2d Cir. 1984)...............................................................................................23

*N.H. v. Me.*,
   532 U.S. 742 (2001).................................................................................................................7

*Pantoja v. Edward Zengel & Son Express, Inc.*,
   500 F. App'x. 892 (11th Cir. 2012) ......................................................................................21

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)...............................................................................................................20

*Pfahler v. Nat. Latex Prods. Co.*,
   517 F.3d 816 (6th Cir. 2007) ................................................................................................21

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
   541 U.S. 1 (2004)...................................................................................................................22

*Salerno v. Leica, Inc.*,
   139 F. Supp. 2d 377 (W.D.N.Y. 2001) .................................................................................10

*In re SunEdison, Inc. ERISA Litig.*,
   331 F. Supp. 3d 101 (S.D.N.Y. 2018)...................................................................................24

*TechnoMarine SA v. Giftports, Inc.*,
   758 F.3d 493 (2d Cir. 2014).................................................................................................10

*In re Teltronics Servs., Inc.*,
   762 F.2d 185 (2d Cir. 1985)..............................................................................................9, 12

*Witchard v. Montefiore Med. Ctr.*,
   No. 05 Civ. 5957(JSR), 2006 WL 2773870 (S.D.N.Y. Sept. 26, 2006)..................................8

**Statutes**

Employee Retirement Income Security Act of 1974 ............................................................. *passim*

Pub. L. No. 99-514, 100 Stat. 2085, § 1119(a) (1986) ...................................................... 18

**Other Authorities**

26 C.F.R. § 1.401-2 ............................................................................................................. 16

26 C.F.R. § 1.401-7(a) ................................................................................................ 3, 16, 17

83 Fed. Reg. 34469, 34470 (July 20, 2018) ...................................................................... 17

83 Fed. Reg. at 34470 ......................................................................................................... 17

88 Fed. Reg. 12282-01, 12283 (Feb. 27, 2023) ................................................................ 18

88 Fed. Reg. at 12285 ......................................................................................................... 18

H.R. Rep. No. 99-841, Vol. II (1986) ................................................................................ 18

Rev. Ruling 67-68, 1967-1 C.B. 86, 1967 WL 15409 ....................................................... 16

Rev. Ruling 71-313, 1971-2 C.B. 203, 1971 WL 26693 ................................................... 17

## PRELIMINARY STATEMENT

This lawsuit asks the Court to violate the doctrine of res judicata by entertaining claims on behalf of the Capital One Financial Corporation Associate Savings Plan (the "Plan") that "could have been" brought in a prior class action filed against Defendant Capital One Financial Corporation ("Capital One") that resulted in a judgment on the merits.  It also asks this Court to upend more than fifty years of settled law and regulatory guidance concerning the use of "forfeited" employer contributions in retirement plans and impose on Capital One obligations that are inconsistent with the Employee Retirement Income Security Act of 1974 ("ERISA"), applicable Treasury regulations, and Supreme Court precedent.  For these reasons, the Complaint should be dismissed.

Under the Plan, Capital One makes matching contributions to participants' individual 401(k) accounts.  Participants must work for at least two years to "vest" in their employer contributions (they are always 100% vested in their own contributions).  Those who leave sooner "forfeit" any unvested amounts as set forth in the Plan.  Here, Plaintiffs claim that Defendants violated ERISA by using forfeitures to fund matching contributions to participants' accounts, instead of paying undefined Plan-related costs for participants.  The Complaint asserts four Counts on behalf of the Plan pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109: breach of the duty of prudence (Count I), breach of the duty of loyalty (Count II), violation of ERISA's anti-inurement clause (Count III), and failure to monitor (Count IV).  Plaintiffs' claims fail for several reasons.

*First*, the order of dismissal with prejudice in *Hall v. Cap. One Fin. Corp.*, No. 1:22-cv-00857-MSN-JFA, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023) bars all of Plaintiffs' claims under res judicata.  In *Hall*, Plan participants, suing on behalf of the Plan pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109, alleged fiduciary breach under ERISA by challenging the Plan's management of Plan assets, challenged Capital One's fiduciary duties of loyalty and prudence, and

1

asserted that under 29 U.S.C. § 1103(c), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants[.]"  *See.*, *e.g*, Amended Class Action Complaint,  *Hall v. Cap. One Fin. Corp.*, No. 22-cv-00857 (E.D. Va. Dec. 15, 2022), ECF No. 50, ¶¶ 57-58 ("Hall Compl.").  In the case at bar, Plaintiffs assert the same causes of action on behalf of the same Plan based on the same statutory provisions, challenging forfeitures that Plaintiffs claim are Plan assets.  Res judicata "prevents parties from raising issues that *could have been raised* and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc*., 590 U.S. 405, 412 (2020) (emphasis added).  The Plan is the real party in interest in both cases, and the claims here could have been asserted in *Hall* and arose from the "same transaction" as the instant case— namely, Capital One's management of alleged Plan assets.  And the publicly available information on which the current Complaint is based was equally available when the *Hall* complaint was filed. As such, the final judgment in *Hall* bars the claims here asserted on behalf of the Plan under res judicata.  *Infra* § I.

*Second*, Plaintiffs' allegations regarding forfeitures, even if true, do not constitute a fiduciary breach.  Plaintiffs received all contributions to their accounts they were owed.  Yet they ask for more, by seeking a portion of the contributions that Capital One made for other employees who happened to have left their jobs before those contributions vested.  There is no support in the law for finding that ERISA *required* Capital One to provide Plaintiffs a greater contribution than what they were entitled to under the Plan by further subsidizing their administrative costs.  Indeed, courts have routinely rejected this "greater benefit" argument, and this Court should do so here. *Infra* § II.

*Third*, Plaintiffs' claims also fail because Plaintiffs' theory regarding forfeitures contradicts settled law under ERISA and long-standing federal regulations. The Treasury Department and Congress have repeatedly authorized the use of forfeitures to offset employer contributions. *See, e.g.*, 26 C.F.R. § 1.401-7(a) (Treasury regulation requiring that forfeitures "must be used as soon as possible to reduce the employer's contributions under the plan"). To accept Plaintiffs' theory would implausibly require the Court to believe the Treasury Department has issued and proposed regulations permitting the very conduct that Plaintiffs say violates ERISA. *Infra* § III.

*Fourth*, to the extent the Complaint alleges that Capital One breached its fiduciary duty by failing to contribute more to the Plan than it already has, this allegation does not support a claim for breach of fiduciary duty because the allegation is not a challenge to fiduciary conduct. The amount an employer contributes—or is required to contribute—to a plan is not subject to ERISA fiduciary standards, and Capital One, as sponsor of the Plan, is entitled to decide what level of benefits it provides and how to fund them. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) ("Nothing in ERISA requires employers to establish employee benefit plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan."). Plaintiffs could have filed a claim for benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) if they believed that they were not receiving their promised benefits under the Plan's terms, but they have not done so. Regardless, Plaintiffs' allegations do not support a claim for breach of fiduciary duty, and their fiduciary breach claims on behalf of the Plan fail as a matter of law. *Infra* § IV.

*Fifth*, the Court should dismiss Count III because the Complaint fails to plausibly allege that Capital One violated ERISA's anti-inurement provision, as Plan forfeitures indisputably were

used to pay benefits to Plan participants, just as ERISA requires.  29 U.S.C. § 1103(c).  Plaintiffs

do not allege forfeitures were removed from the Plan or used for any other purpose other than to

provide participants with benefits and, as a result, have not plausibly stated a claim.  Indeed, when

faced with the very forfeitures claims on which Count III is premised, courts have routinely ordered

dismissal under Rule 12(b)(6).  *Infra* § V.

*Finally*, Plaintiffs' failure to monitor claim (Count IV) fails because it is derivative of

Plaintiffs' other claims, none of which states a plausible claim for relief.  *Infra* § VI.

For each of these reasons,[1] as detailed below, the Complaint has no legal foundation, and

the Court should dismiss it with prejudice.

## FACTUAL BACKGROUND

Plaintiffs are current and/or former participants in the Plan, a defined contribution,

individual account 401(k) plan governed by ERISA.  Compl. ¶¶ 9–18.  In such a plan, a

participant's benefit is based solely upon the assets in his or her account, including gains or losses.

*Id*. ¶ 39.  Capital One is the Plan's sponsor.  *Id*. ¶ 20.  Plaintiffs allege that Capital One, "acting

through" The Board of Directors of Capital One ("Board of Directors"), appointed the Capital One

Investment Committee ("Investment Committee") to serve as administrator.  Compl. ¶¶ 21, 24.

---

[1] To the extent that Plaintiffs' forfeiture allegations are construed as claims for violation of the Plan terms that seek benefits under ERISA 502(a)(1)(B), the Complaint should be dismissed because Plaintiffs do not allege exhaustion of the Plan's administrative claim and appeal process. *See* Compl. ¶¶ 65, 72.  The Second Circuit endorses a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases" alleging a breach of Plan terms.  *Alfarone v. Bernie Wolff Constr.*, 788 F.2d 76, 79 (2d Cir. 1986), and "courts routinely dismiss ERISA claims brought under Section 502(a)(1)(B) on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies."  *Abe v. N.Y. Univ.*, No. 14-cv-9323 (RJS), 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (collecting cases); *id.* (granting a motion to dismiss for failure to state a claim for unpaid benefits because "Plaintiff pleads no facts suggesting any effort to exhaust the remedies available through his ERISA administrative plan").

The Plan helps Capital One employees save for retirement through two main funding sources: (1) voluntary employee deferrals, withheld from an employee's wages; and (2) employer contributions, which Capital One funds into individual accounts pursuant to a matching schedule set forth in the Plan. *Id*. ¶¶ 42–43. Participants are always fully vested in their own contributions. *Id*. ¶ 51. Generally, participants vest in their employer matching contributions after two years of service. Compl. ¶¶ 53–54. Participants who terminate employment before two years of service forfeit the employer contributions previously contributed to their accounts. *Id.*

In 2022, participants filed a lawsuit on behalf of the Plan pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109 alleging that Capital One mismanaged Plan assets by investing in allegedly imprudent funds in violation of its fiduciary duties of care and loyalty under ERISA during a putative class period spanning August 1, 2016 to the date of judgment. *See* Hall Compl., ¶ 1. In that lawsuit, the plaintiffs also complained (like Plaintiffs here) that under 29 U.S.C. § 1103(c), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in a plan[.]" *Id.* ¶ 58; Compl. ¶ 87. The U.S. District Court for the Eastern District of Virginia ordered dismissal of that case with prejudice. *See Hall*, 2023 WL 2333304, at *8.

On November 11, 2024, Plaintiffs filed this action on behalf of the same Plan, wherein they again allege that Capital One mismanaged Plan assets and violated ERISA fiduciary duties of care and loyalty, and breached ERISA's anti-inurement provision, 29 U.S.C. § 1103(c). Specifically, the Complaint alleges that Defendants improperly used forfeitures from the accounts of nonvested participants to reduce subsequent employer contributions. Compl. ¶ 65. Plaintiffs conclude that this violated ERISA, which they maintain requires Capital One to use forfeitures to pay Plan expenses. *Id*. ¶¶ 65–68.

Notably, Plaintiffs do not allege that any Plan participant ever received lesser contributions to their accounts than the Plan promised them.  And Plaintiffs do not assert a claim for benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).  Nor do Plaintiffs allege that they forfeited anything themselves.  They also do not contend that forfeitures were removed from the Plan.  Rather, what Plaintiffs claim is that if Capital One had used forfeitures to pay Plan costs instead of matching contributions, the balance of their and other participants' accounts might be higher because they would have received free (or heavily subsidized) administrative services, rather than paying a portion of such costs from their accounts.

The Complaint asserts four causes of action on behalf of the Plan, pursuant to 29 U.S.C. § § 1132(a)(2) and 1109.  Plaintiffs first claim that the Investment Committee breached ERISA's duty of prudence (Count I) and that all three Defendants breached the duty of loyalty (Count II).  *Id*. ¶¶ 69–85.  Count III claims that Capital One and the Board of Directors violated ERISA's "anti-inurement" provision.  *Id*. ¶¶ 86–91.  Finally, Count IV asserts that Capital One and the Board of Directors failed to monitor the Investment Committee.  *Id*. ¶¶ 92-98.  Plaintiffs purport to represent a putative class encompassing all Plan participants and beneficiaries ("except Defendants and their immediate family members") from November 11, 2018, through the date of judgment.  *Id.* ¶ 31.

## **LEGAL STANDARD**

To survive dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6), Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Whether a complaint states a plausible claim is context-specific, and stating a plausible claim requires more than conclusory allegations devoid of factual support.  *Id.*  The Supreme Court has emphasized that, particularly in ERISA class actions, a Rule 12(b)(6) motion to dismiss is an "important mechanism for weeding

out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

## ARGUMENT

**I.    Res Judicata Mandates Dismissal of Plaintiffs' Claims on Behalf of the Plan That "Could Have Been" Brought in a Prior ERISA Class Action Lawsuit Filed Against Capital One.**

In 2022, participants of the Plan filed an ERISA class action "on behalf of the Plan" alleging that Capital One breached its fiduciary duties by mismanaging Plan assets, which resulted in a final judgment on the merits when the Eastern District of Virginia granted Capital One's motion to dismiss with prejudice. *See Hall*, 2023 WL 2333304. The Complaint must be dismissed under the doctrine of res judicata (also referred to as claim preclusion), which "precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that *might have been raised in the prior litigation but were not*." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107–08 (2d Cir. 2015) (emphasis added).[2]

The defense of res judicata may be raised on a Rule 12(b)(6) motion to dismiss. *Michaelesco v. Est. of Richard*, 355 F. App'x. 572, 573 (2d Cir. 2009). Res judicata applies if "(1) the previous action [i.e., *Hall*] involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). The face of the Complaint establishes that all three of these elements are satisfied here, where Plaintiffs assert on behalf of the same Plan, and against the same Defendant (Capital One), forfeiture claims that "could have been" brought in *Hall* but were not and, therefore, are barred.

---

[2] In contrast, issue preclusion (or collateral estoppel) bars re-litigation of an issue of fact or law that was "actually litigated" in the first action. *N.H. v. Me.*, 532 U.S. 742, 748–749 (2001).

### A.    Final Judgment on the Merits.

In *Hall*, the court granted Capital One's motion to dismiss the amended complaint in its entirety and with prejudice.  *See Hall*, 2023 WL 2333304, at *8.[3]  "Dismissal with prejudice as a result of a successful motion to dismiss is usually considered a final adjudication on the merits," *Witchard v. Montefiore Med. Ctr.*, No. 05 Civ. 5957(JSR), 2006 WL 2773870, at *6 (S.D.N.Y. Sept. 26, 2006), "and the judgment has the same effect of res judicata as though rendered after trial, in a subsequent suit on the same claim."  *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 271 (2d Cir. 1977).  *See also Cameron v. Church*, 253 F. Supp. 2d 611, 617, 620 (S.D.N.Y. 2003) (dismissal of an amended complaint under Rule 12(b)(6) constituted a final judgment on the merits).  The Order of dismissal in *Hall* satisfies the first element of claim preclusion.

### B.    Identity or Privity of Parties.

Both the Complaint in *Hall* and the Complaint in this matter on their face state that the claims asserted therein are brought "on behalf of the Plan."  *See* Hall Compl. ¶ 1.  Supreme Court and Second Circuit case law firmly holds that fiduciary breach actions under 29 U.S.C. §§ 1132(a)(2) and 1109 are, by definition, brought in a representative capacity on behalf of the plan.  *Cedeno v. Sasson*, 100 F.4th 386, 396–98 (2d Cir. 2024) ("Sections 502(a)(2) and 409(a) together establish a framework pursuant to which a plan participant aggrieved by a breach of duty by a plan fiduciary may seek remedies only on behalf of and for the plan."); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 180 (2d Cir. 2021) (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008)) ("Sections 502(a)(2) and 409, read together, mean that a plaintiff suing for breach of fiduciary duty under [Section] 502(a)(2) ... may seek recovery only for injury done

---

[3] The appeal filed by the plaintiffs in *Hall* was also dismissed.  *See Hall*, No. 1:22-cv-00857-MSN-JFA, ECF No. 73 ("This court's order dismissing this appeal pursuant to Local Rule 42(b) takes effect today. This constitutes the formal mandate of this court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.")

to the wronged plan.")).  Thus, for the purposes of party privity, differences among the individually named class members are irrelevant since both *Hall* and the current action are brought on behalf of the same plaintiff: the Plan.

The Defendants in *Hall* and in this case are also in privity, as Capital One Financial Corporation, the Plan sponsor, is named in both actions, as are the fiduciaries of the Plan. Regardless, the hallmark of privity is whether any new defendant bears a "sufficiently close relationship" to the original defendant, such as where a party "control[led] or substantially participate[d] in the control of the presentation on behalf of a party to the prior action." *Fischer v. Brushy Mountain Bee Farm, Inc.*, No. 17-CV-10094 (PAE) (OTW), 2019 WL 935957, at *8 (S.D.N.Y. Feb. 26, 2019); *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995).  This Court has found that ERISA plan fiduciaries bear a sufficiently close relationship with the company sponsoring the plan, and the same is true here. *See Adams v. IBM Pers. Pension Plan*, 533 F. Supp. 2d 342 (S.D.N.Y. 2000) (dismissing under Rule 12(b)(6) an ERISA class action on res judicata grounds); *see also Cook v. Unisys Fed. Gov't, Grp.*, No. 7:14–cv–579, 2015 WL 5690928, at *10, n.9 (W.D. Va. Sept. 3, 2015) (noting that plaintiff's ERISA benefits claim was barred under res judicata because the claim administrator that defended the first action was in privity with the employer who was sued in the second action).

### C.    Identity of Claims in the Two Actions.

*Hall* and the instant case both allege claims for fiduciary breach under 29 U.S.C. §§ 1132(a)(2) and 1109 based on the duty of prudence and duty of loyalty, and ERISA's anti-inurement provision, 29 U.S.C. § 1103(c).  And both involved the alleged mismanagement or misuse of Plan assets.  While the precise Plan assets in question might be different in the two cases, "[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985); *see also*

*Andrews-Clarke v. Lucent Techs., Inc.*, 157 F. Supp. 2d 93, 102 (D. Mass. 2001) (ordering dismissal under res judicata because "[a]lthough some of the claims in the current action are 'cloaked' with different theories of liability and some new selections of remedy, the fundamental cause of action remains the same").

Indeed, privity tests whether the claims "arise from the same transaction." *Lucky Brand Dungarees, Inc.*, 590 U.S. at 412. This standard considers "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014).

Here, both cases involve the alleged mismanagement of Plan assets causing purported harm to the Plan. The putative class periods in the two cases substantially overlap and thus the fiduciary breach claims are "related in time." The claims also share the same "origin": the Plan and ERISA fiduciary duties. The relevant documents (e.g., the Plan documents) and witnesses (e.g., the Plan committee) are precisely the same, and there is no argument why the claims in *Hall* and the case at bar would not "form a convenient trial unit." Accordingly, *Hall* and the case at bar arise from the same transaction—management of the Plan—and the Complaint is subject to dismissal under res judicata. *See Salerno v. Leica, Inc.*, 139 F. Supp. 2d 377, 383–85 (W.D.N.Y. 2001) (dismissing on res judicata grounds ERISA claims brought in a second action where the plaintiff had previously filed a wrongful termination suit, because the "grav[e]man" of both complaints was that the employer had denied the employee severance benefits); *Magi XXI, Inc. v. Stato Della Cita Del Vaticano*, 22 F. Supp. 3d 195, 202–04 (E.D.N.Y. 2014) (applying res judicata to grant a motion to dismiss breach of contract claims pled by a plaintiff who previously sued under a fraud theory where the claims rested on the same operative facts).

In fact, several cases challenge both a plan's management of forfeitures and other alleged plan assets in connection with plan investments and fees in the same litigation, including a putative ERISA class action recently filed by Plaintiffs' own counsel in a sister court.  In *John Fumich, et al v. Novo Nordisk Inc., et al*, Case No. 3:24-cv-09158, participants in a 401(k) plan alleged that the defendants breached their fiduciary duties by "failing to objectively and adequately review the Plan's investment portfolio," "failing to control the Plan's Recordkeeping and Administrative ('RKA') costs," and by using "Plan participant forfeited funds to reduce Company contributions to the Plan instead of using the funds to reduce or eliminate the amounts charged to Plan participants for RKA services."  (D.N.J. Sept. 13, 2024), ECF No. 1, ¶¶ 7-9.  Plaintiffs characterized each of these claims as part of "Defendants' mismanagement of the Plan, to the detriment of participants and beneficiaries, [that] constitutes a breach of the fiduciary duty of prudence[.]"  *Id.* at ¶ 10.  *See also Conan Nado, et al v. John Muir Health, et al*, Case No. 3:24-cv-01632-AMO, (N.D. Cal. Mar. 15, 2024), ECF No. 1 (participants in a 403(b) plan asserting on behalf of a putative class forfeiture claims as well as alleging excessive recordkeeping fees).

Moreover, in the Second Circuit, "[i]t is well-settled that multiple claims based upon a single contract are considered part of the same transaction, unless the plaintiff could not have asserted a claim in the original action."  *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 564 (S.D.N.Y. 2016) (citing *Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990)).  The fiduciary breach claims in *Hall* and the instant action are based on the same "contract:" the Plan.[4]  In *Kamdem-Ouaffo*, this Court found privity on a motion to dismiss where, in the first

---

[4] ERISA-governed plans are contracts.  *See Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002) (ruling that a "claim under § 1132(a)(1)(B), in essence, is the assertion of a contractual right" and that "[i]n interpreting plan terms for purposes of claims under § 1132(a)(1)(B), we apply a federal common law of contract"); *Devlin v. Empire Blue Cross AND Blue Shield*, 274 F.3d 76, 84 n.4 (2d Cir. 2001) ("Contract law [] guides our determination of

action, the plaintiff alleged violation of a whistleblower statute arising out of termination of his employment contract, and in the second action alleged that the company misappropriated intellectual property that the plaintiff allegedly developed during his employment contract. The court reasoned that the plaintiff's claims, although varied on their face, "ar[o]se out of the same factual predicate as the original claims, namely Plaintiff's work assignment contract." *Id.* at 564. Likewise, here, the claims regarding the management of Plan assets in *Hall* and the management of Plan assets in this action arise from the same contract—the Plan—and are "considered part of the same transaction." *See id.*

Notably, the Complaint allegations about Plan forfeitures in this case are disclosed in the exact same Form 5500s cited in the Complaint in *Hall*.[5] The "facts necessary to support the claims before [the Court] now were pleaded, or could have been pleaded, in the first action commenced by [Plaintiffs]," and thus the "judgment [in *Hall*] was res judicata not only as to what was pleaded, but also as to what could have been pleaded." *In re Teltronics Servs., Inc.*, 762 F.2d at 193. Res judicata mandates dismissal of the Complaint.

## II.    ERISA Does Not Require Increasing Plaintiffs' Benefit Under the Plan.

In addition to res judicata, the Complaint also fails because its central theory—that Capital One was required to pay more toward Plaintiffs' retirement savings than the Plan provides—contradicts fundamental principles of ERISA, which does not require increasing Plaintiffs' benefits under the Plan. Congress enacted ERISA to ensure that retiring employees received the

---

whether, under ERISA, [the] plaintiffs are entitled to 'enforce their rights' under the terms of the plan.").

[5] *See* Hall Compl., ¶ 29, n.6 (noting that the "Plan's Form 5500s provide detailed schedule of the Plan's holdings at the end of each calendar year" and referencing Form 5500s "as far back as the 2013 Form 5500"); *see* Compl. ¶ 66 (citing "information from the Plan's Form 5500s" from 2018 to 2023).

benefits their employers promised them; it did not legislate what those benefits must be, rather leaving such decisions to the employer responsible for funding them. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999) ("ERISA, by and large, is concerned with 'ensur[ing] that employees will not be left emptyhanded once employers have guaranteed them certain benefits,' not with depriving employers of benefits incidental thereto.") (quoting *Spink*, 517 U.S. at 887 ); *Burgio & Campofelice, Inc. v. N.Y. State Dep't of Lab.*, 107 F.3d 1000, 1007 (2d Cir. 1997) ("ERISA does not mandate that employers provide any particular benefits" and "private parties, not the Government, control the level of benefits.")).

Plaintiffs do not claim that they or any other Plan participant ever received less than the full matching contributions the Plan promised them.  In fact, Plaintiffs have not alleged a claim for benefits under the Plan, 29 U.S.C. § 1132(a)(1)(B), as they were entitled to do if they believed they have not received their promised benefits.  Nor do they allege that Capital One violated the Plan by contributing less than it should have, or that it failed to fund the Plan sufficiently to provide all employer contributions due.  Rather, Plaintiffs' claim is that Capital One should be forced to grant them an even greater contribution than the Plan provides.

This "greater benefit" theory is inconsistent with ERISA. Employers are under no obligation to offer any benefits at all because "ERISA does not require an employer to provide an employee benefit plan in the first instance, or to provide a specific level of benefits."  *In re Am. Express Co. ERISA Litig.*, 762 F. Supp. 2d 614, 626 (S.D.N.Y. 2010); *HMI Mech. Sys. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) (same).  And Congress did not require employers to pay, or otherwise subsidize, a plan's administrative expenses.  To the contrary, such costs may be—and routinely are—lawfully charged to plan participants. *See, e.g.*, *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) ("ERISA does not create any fiduciary duty requiring employers

to make pension plans more valuable to participants" by paying plan expenses).[6] ERISA's concern is that those costs are "reasonable." 29 U.S.C. § 1104(a)(1)(A)(ii); *Haberern v. Kaupp Vascular Surgeons Ltd.*, 24 F.3d 1491, 1498 (3d Cir. 1994) ("ERISA's concern is with the administration of benefit plans and not with the precise design of the plan."). Here, Plaintiffs do ***not*** allege that the Plan's administrative costs were unreasonable. Instead, they allege that Capital One should have paid those costs instead of Plan participants. Nothing in ERISA requires this. *See Hughes Aircraft*, 525 U.S. at 439 (1999) (quotations omitted) ("A defined contribution plan is one where employees and employers may contribute to the plan, and the employer's contribution is fixed and the employee receives whatever level of benefits the amount contributed on his behalf will provide" and "[u]nder such plans, by definition, there can never be an insufficiency of funds in the plan to cover promised benefits, since each beneficiary is entitled to whatever assets are dedicated to his individual account.").

Indeed, when presented with the very same forfeiture claims pleaded in this action, courts have granted motions to dismiss upon rejecting the greater benefit theory advanced by Plaintiffs. In *Hutchins v. HP Inc.*, No. 23-cv-05875-BLF, 2024 WL 3049456, a putative class of ERISA plan participants likewise alleged that the defendants "breached their fiduciary duties of loyalty and prudence when they chose to allocate forfeited amounts to reduce employer contributions rather than to pay administrative expenses." *Id.* at *6 (N.D. Cal. June 17, 2024). The court characterized these claims as "effectively arguing that the fiduciary duties of loyalty and prudence create a benefit: the payment of his administrative costs." *Id.* "However," the court continued, "the Plan does not provide any such benefit, and Plaintiff does not allege any facts showing that he is entitled

---

[6] *See also* DOL, *Understanding Retirement Plan Fees and Expenses*, at 2 ("[A]dministrative costs . . . may be borne, in whole or in part, by the employer or charged directly against the assets of the plan[.]"); *available at* http://tinyurl.com/DOLFeesAndExpenses (last visited Dec. 13, 2024).

to such a benefit." *Id*. The court further observed that ERISA "creates no exclusive duty of maximizing pecuniary benefits," and thus the plaintiff had no basis to claim an entitlement to reduced administrative costs, as Plaintiffs nevertheless seek here. *Id*. (quoting *Foltz v. U.S. News & World Rep., Inc*., 865 F.2d 364, 373 (D.C. Cir. 1989)). The court concluded: "Plaintiff's claim is that the fiduciary duty provisions create an unqualified duty to pay administrative costs—that is, to maximize pecuniary benefits in favor of plan beneficiaries. But it is neither disloyal nor imprudent under ERISA to fail to maximize pecuniary benefits." *Id.*

Three months after *Hutchins* was handed down, the Southern District of California found the "reasoning in *Hutchins* persuasive" and granted the defendants' motion to dismiss the same forfeiture claims pleaded here. *See Dimou v. Thermo Fisher Sci. Inc*., No.: 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *2, *9 (S.D. Cal. Sept. 19, 2024). The plain language of ERISA countenances against the greater benefit theory advanced by Plaintiffs and, together with recent case law dismissing forfeiture claims for that reason, render dismissal appropriate here, too.

## III.   Plaintiffs' Claims Are Foreclosed by Decades of Settled Law That Permits Using Forfeitures to Provide Benefits to Other Plan Participants.

### A.    Congressional and Regulatory Background.

Well-established case law and long-standing IRS guidance contradict Plaintiffs' claims. The law has always recognized that forfeited contributions are still *employer* contributions, made at a prior time and no longer allocated to any individual plan participant. There is nothing improper about allowing such forfeitures to be used to fund other benefits.

As a tax-qualified plan, the Plan is subject to numerous requirements set forth in the IRS Tax Code. Adherence to those "qualification requirements" ensures both the deductibility of the employer's contributions and the tax deferral of employer contributions, employee contributions, and earnings thereon. *See* 26 U.S.C. § 401. From the outset, ERISA and the Tax Code have been

inextricably intertwined; indeed, ERISA amended the Tax Code and is the source of many of the Code's qualification requirements.[7]  Congress even required the Treasury Department and Department of Labor to coordinate in enforcing ERISA, to the extent the statutes overlap.  29 U.S.C. § 1204.  The Treasury Department, in turn, has promulgated many regulations with which a plan must comply to remain tax-qualified.

Much like ERISA, the Tax Code also mandates that assets in a tax-qualified trust must not be "used for, or diverted to, purposes other than for the exclusive benefit of" the employees and beneficiaries for whom the trust is established.  26 U.S.C. § 401(a)(2); *see also* 26 C.F.R. § 1.401-2.  Therefore, a retirement plan would not be tax-qualified under the Tax Code if it allowed for the possibility that "any part of the corpus or income [could] be . . . used for, or diverted to" some other purpose—such as benefiting the employer.  29 U.S.C. § 401(a)(2).

Notwithstanding the Tax Code's exclusive-purpose requirement, Treasury regulations have expressly authorized—since *before* ERISA was enacted—the use of forfeitures to reduce or offset future employer contributions.  Specifically, 26 C.F.R. § 1.401-7(a) requires that forfeitures "must be used as soon as possible to *reduce the employer's contributions* under the plan."  *Id.* (emphasis added); *see also* Rev. Ruling 67-68, 1967-1 C.B. 86, 1967 WL 15409.  Yet, this is precisely the practice Plaintiffs challenge as improper.  Compl. ¶ 65.

Consistent with § 1.401-7(a), both the Treasury Department and Congress have made clear over the ensuing six decades that a defined contribution plan may use forfeitures to provide benefits to other participants (thereby reducing future employer contributions).  For example, a

---

[7]  *See, e.g.*, DEP'T OF LABOR, HISTORY OF EBSA AND ERISA, *available at* https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/history-of-ebsa-and-erisa  (last  visited Jan. 9, 2025) ("Title II of ERISA, which amended the Internal Revenue Code to parallel many of the Title I rules, is administered by the IRS.").

1971 IRS Revenue Ruling explained that "profit-sharing and stock bonus plans"—the Capital One Plan is a "qualified profit-sharing plan" under the Tax Code (Plan, at vii)—"may provide that forfeitures be used *to reduce employer contributions* that otherwise would be required under the contribution formula contained in the plan."  Rev. Ruling 71-313, 1971-2 C.B. 203, 1971 WL 26693 (1971) (emphasis added).  The IRS issued similar informal guidance in 2010, advising that forfeitures "may be used to pay for a plan's administrative expenses and/or to *reduce employer contributions*," also observing that § 1.401-7(a) "notes that forfeitures must be used as soon as possible to reduce employer contributions" and that "it may be appropriate to take the non-current-year forfeitures and *use them as employer contributions* for the current plan year."  2010 Newsletter of the Employee Plans Office of the IRS Tax Exempt & Govt. Entities Div., at 4-5 (Ret. News for Employers, Vol. 7, Spring 2010), *available at* https://www.irs.gov/pub/irs-pdf/p4278.pdf (emphases added).  The Internal Revenue Manual also confirms that forfeitures in a defined contribution plan "must be allocated to the remaining participants or used *to reduce employer contributions* that are otherwise required under the plan."  IRM § 7.12.1.9, *Forfeitures* (02-16-2017), 2007 WL 9649931.  There can be no legitimate dispute that using forfeitures, as the Plan allegedly does, has been widely authorized and accepted for decades.

Other Treasury regulations further confirm that forfeitures may be allocated to future employer contributions.  *See*, *e.g.*, 83 Fed. Reg. 34469, 34470 (July 20, 2018) (expressly "permit[ting] forfeitures of prior contributions to be used to fund" qualified matching contributions ("QMACs") and qualified non-elective contributions ("QNECs")); 83 Fed. Reg. at 34470 (noting that prior regulation "preclude[d] plan sponsors with plans that permit the use of amounts in plan forfeiture accounts to *offset future employer contributions under the plan* from applying such amounts to fund QMACs and QNECs") (emphasis added)).

Congress has confirmed the same understanding about the use of forfeitures as the Treasury Department.  For example, the Tax Reform Act of 1986 amended 26 U.S.C. § 401(a)(8)—which prohibits using forfeitures to "increase the benefits any employee would otherwise receive"—to clarify that this prohibition applies only to defined benefit plans (unlike the defined contribution Plan here).  *See* Pub. L. No. 99-514, 100 Stat. 2085, § 1119(a) (1986).  In explaining the bill, the House Conference Report made clear that under existing law, "forfeitures arising in any *defined contribution plan* can be either (1) reallocated to the accounts of other participants in a nondiscriminatory fashion, or (2) used to *reduce future employer contributions* or administrative costs."  H.R. Rep. No. 99-841, Vol. II at 442 (1986) (emphases added).  Indeed, the Treasury Department recently recounted this history when proposing new regulations, highlighting Congress's intent in 1986 to "provide[] uniform rules regarding the use of forfeitures under any defined contribution plan."  88 Fed. Reg. 12282-01, 12283 (Feb. 27, 2023).

Finally, just last year the Treasury Department proposed a new regulation to clarify the permissible use of forfeitures in defined contribution plans.  In doing so, it reaffirms the same understanding both it and Congress have expressed for more than fifty years.  This regulation requires a defined contribution plan to provide that forfeitures "will be used" for one or more of three lawful purposes: "(i) To pay plan administrative expenses; (ii) *To reduce employer contributions under the plan*; or (iii) To increase benefits in other participants' accounts in accordance with plan terms."  88 Fed. Reg. at 12285 (emphasis added).  This proposed regulation, like the existing one, explicitly authorizes the very conduct Plaintiffs challenge.  To accept Plaintiffs' theory, therefore, would mean that the Treasury Department continues to authorize a practice that simultaneously constitutes a per se violation of ERISA.  This is simply not plausible.

In *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2024 WL 4944363, the court found

"instructive" this proposed Treasury regulation and concluded that the plaintiffs, who alleged the same forfeiture claims asserted here, failed to "explain how the Department of Treasury would now allow forfeitures to be used to reduce employer contributions if such a practice breached fiduciary duties" and ordered dismissal of fiduciary breach claims under Rule 12(b)(6).  *Id.* at *6 (N.D. Cal. Nov. 1, 2024)*; see also McBride v. Microdot Salaried Emps. Pension Plan*, No. 88–7382, 1989 WL 107023, at *2, n.9 (E.D. Pa. Sept. 12, 1989) ("plac[ing] much deferential weight in the proposed [Treasury] regulations" and relying on same to determine a vesting issue under ERISA).  The settled legal precedent authorizing forfeitures forecloses Plaintiffs' forfeiture claims.

### B.    Plaintiffs' Theory Is Implausible Under This Established Law.

Consistent with the proposed regulation on which the court in *McManus* relied to dismiss forfeiture claims, neither Congress nor the Treasury Department has prohibited employers from using forfeitures to reduce future employer contributions.  To the contrary, the proposed regulation will continue to allow employers to do just that.  *See CFTC v. Schor*, 478 U.S. 833, 846 (1986) ("[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.") (quotations and citations omitted).  That Congress and the Treasury Department permit the very conduct Plaintiffs challenge confirms that it does not violate ERISA.

In contrast, *none* of the ERISA provisions Plaintiffs cite say anything about forfeitures.  *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) (a statute's silence should be construed "as exactly that: silence").  Plaintiffs rely instead on generic concepts under ERISA's fiduciary and anti-inurement provisions, all of which address conduct distinct from the actions challenged here.  It is not plausible to suggest that statutory provisions which do not even mention forfeitures nevertheless prohibit using them.  *See Mertens v. Hewitt Assocs.*, 508 U.S.

248, 261-62 (1993) ("vague notions of a statute's 'basic purpose' are [] inadequate to overcome the words of its text," which is "especially true with legislation such as ERISA"); *Christensen v. Harris County*, 529 U.S. 576, 585 (2000) (a practice is not barred by a statute that "says nothing about it).

At bottom, the Complaint relies on the false premise that using amounts forfeited by unvested Plan participants to reduce employer contributions in a later year somehow constitutes a windfall to Capital One.  This is simply false—which is why neither Congress nor any federal agency has ever barred employers from using forfeitures in this way.

## IV.    The Complaint Additionally Must Be Dismissed Because It Does Not Allege That Capital One Acted as a Fiduciary With Respect to Forfeitures.

The "threshold question" for any alleged fiduciary breach is whether the defendant "was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 225–226 (2000); *Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44, 47 (2d Cir. 2020) (same).  The Complaint cannot overcome this threshold requirement because it merely challenges Capital One's plan design decisions.

It is black-letter law that an employer's voluntary decision to offer a plan—as well as related decisions over its terms, how it will be funded, and whether to make employer contributions (and, if so, how much to contribute)—are each plan design decisions made in a settlor capacity, not a fiduciary capacity.  *See*, *e.g.*, *Hughes Aircraft*, 525 U.S. at 432, 444 ("decision[s] regarding the form or structure of the [p]lan such as who is entitled to receive [p]lan benefits and in what amounts" are settlor functions); *Coulter v. Morgan Stanley & Co., Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) (noting that "non-fiduciary duties generally include 'decisions relating to the timing and amount of contributions,'" and holding that an employer's decision to make contributions in company stock, rather than cash, was not fiduciary in nature).  This is so because ERISA does not

require an employer to provide any particular level of benefits; in fact, ERISA does not require an employer to offer a plan at all. *Supra* § II.

This settled authority forecloses Plaintiffs' claims. At its core, Plaintiffs complain that Capital One should be required to contribute more to the Plan than it already has. But ERISA fiduciary standards do not apply to those contributions, and an employer that does not contribute to a plan—even if required to do so by the plan terms—does not breach any fiduciary duty.[8] *See Pfahler v. Nat. Latex Prods. Co.*, 517 F.3d 816, 832 (6th Cir. 2007) ("defendants did not breach their fiduciary duties by failing to collect employer contributions because the employer [] was not obligated to fund the Plan"); *Pantoja v. Edward Zengel & Son Express, Inc*., 500 F. App'x. 892, 896 (11th Cir. 2012) (employer's non-payment of contributions to the plan did not support a fiduciary breach claim); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("Nor does ERISA establish any minimum participation, vesting, or funding requirements for welfare plans[.]")*; see also Coulter*, 753 F.3d at 367 (settlor functions, which "include conduct such as establishing, funding, amending, or terminating a plan[,]" "do[] not constitute fiduciary conduct under ERISA"). Because the Complaint challenges only non-fiduciary decisions, the Court should dismiss Plaintiffs' claims. *See, e.g.*, *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 679 (3d Cir. 1999) (affirming dismissal after finding settlor functions under *Spink* and *Hughes Aircraft*); *Coulter*, 753 F.3d at 367-68 (affirming dismissal of fiduciary breach claims after finding no relevant fiduciary conduct).

---

[8] Of course, a participant who does not receive contributions to his or her account can sue for the benefits they are owed. But that is a claim under 29 U.S.C. § 1132(a)(1)(B). Plaintiffs do not press that claim here.

V.      **Plaintiffs Fail to State a Violation of the Anti-Inurement Clause.**

Count III further fails because the Plan is alleged to use forfeitures for providing benefits to participants, exactly as ERISA requires.  ERISA's anti-inurement provision provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."  29 U.S.C. § 1103(c)(1).  The Supreme Court has interpreted this language as "focus[ing] exclusively on whether fund assets were used to pay pension benefits to plan participants."  *Hughes Aircraft*, 525 U.S. at 442.  In other words, the "[anti-inurement] provision demands only that plan assets be held for supplying benefits to plan participants."  *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004). Thus, the anti-inurement provision focuses on the removal or "diversion" of assets from a plan, *Krohnengold v. N.Y. Life Ins. Co.*, No. 21-CV-1778 (JMF), 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022), and it "can only be violated if there has been a removal of plan assets[.]"  *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992).

Plaintiffs do not, because they cannot, allege that using plan assets to offset future contributions somehow diverts assets from the Plan.  *See Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001) (rejecting alleged violation of anti-inurement provision, despite that GE leveraged surplus assets in a pension plan to obtain a higher sale price of a business, because "all of the pension surplus that GE transferred to Lockheed was used to fund pension benefits" (i.e., remained in the plan)).  To the contrary, Plaintiffs concede, as they must, that forfeitures are not removed from the Plan, but in fact remain in the Plan and are reallocated to other participant accounts.  Compl. ¶¶ 63–65.  Where, as here, plaintiffs "do not allege that [defendant] used any of the assets for a purpose other than to pay its obligations to Plan beneficiaries," there is no ERISA violation, *Hughes Aircraft*, 525 U.S. at 443, and courts routinely order dismissal.  *See, e.g.,*

*Luciano Barragan v. Honeywell Int'l Inc.*, No. 24cv4529 (EP) (JRA), 2024 WL 5165330, at *2 (D.N.J. Dec. 19, 2024) (dismissing an anti-inurement claim under Rule 12(b)(6) where the alleged "forfeited amounts do not leave the Plan and are used to satisfy [the plan's] obligations" by funding the plan's "contribution obligations for other Plan participants"); *Hutchins*, 2024 WL 3049456, at *7–9 (canvassing case law, analogizing forfeitures to "surplus plan assets," and finding no anti-inurement violation where "the forfeited amounts remain part of the Plan's trust fund and are used to benefit Plan beneficiaries"); *Dimou*, 2024 WL 4508450, at *10 (plaintiff failed to state a claim where "[p]laintiff fails to allege removal of plan assets for the benefit of anyone other than the Plan participants"); *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir. 1995) (ordering dismissal of anti-inurement claims where "no such reversion, diversion, or any other sort of payment of surplus assets ... is alleged").

At most, Plaintiffs contend that Capital One indirectly benefitted from its use of Plan forfeitures (Compl. ¶¶ 63–65, 89). But "allegations of 'indirect' benefits inuring to an employer are insufficient to state an anti-inurement claim under Section 403(c)(1)." *Krohnengold*, 2022 WL 3227812, at *10 (citing *Flanigan*, 242 F.3d at 78, 88). "It is no violation of a [] fiduciary duties to take a course of action which reasonably best promotes the interest of plan participants simply because it incidentally also benefits the corporation." *Morse v. Stanley*, 732 F.2d 1139, 1146 (2d Cir. 1984). For example, in *McManus*, the court granted a motion to dismiss with prejudice specifically where "defendants received indirect and incidental benefits from funds to which plaintiff is not entitled under the Plan language," because "more than a benefit to employers is required to state an anti-inurement claim." *McManus*, 2024 WL 4944363, at *7.

Thus, any incidental benefit Capital One receives from reallocating assets within the plan is irrelevant. *See*, *e.g.*, *Holliday v. Xerox Corp.*, 732 F.2d 548, 550–51 (6th Cir. 1984) (no violation

when an employer transferred funds from one account to offset amounts it would have to contribute in another account, despite that this "ultimately had the effect of reducing the amount of money" the employer had to contribute).  And the fact that Capital One might contribute less additional money to the Plan is likewise immaterial, so long as the assets within the Plan were used to pay benefits, as they were here.  *Hughes Aircraft*, 525 U.S. at 443 (rejecting anti-inurement claim where employer directed surplus plan assets toward funding a new benefit in the same plan).

As a matter of basic economics and math, forfeitures constitute money that Capital One contributed for participants who did not ultimately vest in those contributions and thus were never entitled to them.  Plaintiffs do not claim that forfeitures were removed from the Plan and restored to Capital One.  Rather, they allege that they remain in the Plan and are simply reallocated to pay other participants' accounts.  Compl. ¶ 65.  As such, forfeitures are used to "provid[e] benefits to participants," 29 U.S.C. § 1103(c)(2)(A), just as ERISA's fiduciary provisions require.  Accordingly, Plaintiffs' claims have no legal foundation.

Indeed, their anti-inurement theory could be lodged against *every* retirement plan in America that allows using forfeitures to reduce employer contributions—a standard practice that Congress and federal regulators have permitted for decades.  The Complaint alleges nothing unique to Capital One's Plan on this theory, or any factual basis warranting the Court to deviate from the foregoing precedent that requires dismissal of Count III of the Complaint.

## VI.    Plaintiffs Fail to Plausibly Allege a "Failure to Monitor" Claim.

Finally, Count IV asserts that Defendants breached a "duty to monitor" other fiduciaries.  Compl. ¶¶ 92–98.  This claim is derivative of Plaintiffs' others—and because they fail, so too does Count IV.  *See*, *e.g.*, *In re SunEdison, Inc. ERISA Litig.*, 331 F. Supp. 3d 101, 114 (S.D.N.Y. 2018) (dismissing a failure to monitor claim because the Complaint failed to allege fiduciary breach);

*Jander v. Int'l Bus. Machines Corp.*, 205 F. Supp. 3d 538, 546–547 (S.D.N.Y. 2016) ("Because Plaintiffs have failed to allege an underlying breach, the duty to monitor claim is dismissed.").

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and dismiss the Complaint in its entirety and with prejudice.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

Dated:  January 13, 2025

s/ *Jeremy P. Blumenfeld*
Jeremy Blumenfeld
101 Park Avenue
New York, NY  10178
T: 212.309.6000
F: 212.309.6001
E: jeremy.blumenfeld@morganlewis.com

*Counsel for Defendants*

## WORD COUNT CERTIFICATE

I certify that this memorandum of law contains 7,625 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, and therefore complies with the word count limit set forth in The Honorable Margaret M. Garnett's Individual Rules & Practices.

*/s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld

## CERTIFICATE OF SERVICE

I certify that, on January 13, 2025, a copy of the foregoing document and all exhibits/attachments thereto were filed electronically, and notice of this filing will be sent by email to all parties by the Court's electronic CM/ECF filing system.

*/s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld