# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

STEPHANIE SINGH, GWEN DEJESUS,
JOSHUA ALLEN, RAUL MORALES,
ADRIAN BARRERA, JR., CLAIRE
MOORE, PATRICE JOHNSON, NIJA
WINTER, and MICHAEL SUTTON,
individually and on behalf of all others
similarly situated,

                         Plaintiff,

            v.

CAPITAL ONE FINANCIAL
CORPORATION, THE BOARD OF
DIRECTORS OF CAPITAL ONE
FINANCIAL CORPORATION, CAPITAL
ONE FINANCIAL CORPORATION
INVESTMENT COMMITTEE and JOHN
DOES 1-30,

                    Defendants.

**CIVIL ACTION NO.: 1:24-cv-8538**

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION DISMISS TO THE COMPLAINT

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTS .................................................................................................................3

    A.    The Plan and the Parties.................................................................................3

    B.    Forfeitures......................................................................................................6

        1.    Permissible Uses ..................................................................................4

        2.    Defendants' Improper Use of Forfeitures ...................................................4

III.   ARGUMENT .......................................................................................................5

    A.    Standard of Review.........................................................................................5

    B.    *Res Judicata* Does Not Apply Here ..............................................................6

        1.    The Distinct Plaintiffs ...........................................................................7

        2.    The Claims in *Hall* Were Too Distinct ...................................................9

            i.    The Allegations are Fundamentally Different ................................9

            ii.    The Second Circuit's Transaction Test........................................10

           iii.    Differing Discovery ..................................................................12

        3.    The Plan is Not a Contract ...................................................................13

    C.    Defendants Violated the Plan Document in Contravention of ERISA .................14

    D.    The Tax Code Permits Plaintiffs' Claims ............................................................18

    E.    Capital One Acted as a Fiduciary With Respect to Forfeitures ...........................20

    F.    Defendants Violated ERISA's Anti-Inurement Provision....................................22

    G.    Plaintiffs Plausibly Allege their Duty to Monitor Claims ....................................24

IV.   CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Alpert's Newspaper Delivery Inc. v. The New York Times Co.*,
876 F.2d 266 (2d Cir. 1989) ............................................................................................. 9

*Amara v. CIGNA Corp.*,
775 F.3d 510 (2d Cir. 2014) ............................................................................................. 15

*Andrews-Clarke v. Lucent Techs., Inc.*,
157 F. Supp. 2d 93 (D. Mass. 2001) ................................................................................ 10

*Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ........................................................................................................... 6

*Barragan v. Honeywell Int'l Inc.*,
No. 24-cv-4529, 2024 WL 5165330 (D.N.J. Dec. 19, 2024) ........................................... 24

*Beck v. Levering*,
947 F.2d 639 (2d Cir. 1991) ......................................................................................... 8, 11

*Braden v. Wal–Mart Stores, Inc.*,
588 F.3d 585 (8th Cir.2009) .............................................................................................. 6

*Bryant v. Food Lion, Inc.*,
774 F. Supp. 1484 (D.S.C. 1991) .................................................................................... 20

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir. 2024) ............................................................................................. 9

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
472 U.S. 559 (1985) ..................................................................................................*Passim*

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
92 F.4th 381 (2d Cir. 2024) .............................................................................................. 6

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006) ...................................................................................... 8, 9, 10

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) .............................................................................................. 9

*Dardaganis v. Grace Cap. Inc.*,
889 F.2d 1237 (2d Cir. 1989) ........................................................................................... 15

*Dimou v. Thermo Fisher Sci. Inc.,*
No.: 23-cv-1732, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) .......................................... 18, 24

*Feifer v. Prudential Ins. Co. of Am.,*
306 F.3d 1202 (2d Cir. 2002) ..................................................................................................... 14

*Frulla v. CRA Holdings, Inc.*
596 F. Supp. 2d 275, 282 (D. Conn. 2009).............................................................................. 10, 11

*Fumich v. Novo Nordisk Inc.,*
No. 24-cv-09158, (D.N.J. Sept. 13, 2024) ................................................................................... 12

*Hall v. Cap. One Fin. Corp.,*
No. 22-cv 00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ............................................*Passim*

*Hughes Aircraft Co. v. Jacobson,*
525 U.S. 432 (1999).......................................................................................................... 22, 23, 24

*Hughes v. Nw. Univ.,*
142 S. Ct. 737 (2022) "*Hughes I*" ......................................................................................*Passim*

*Hutchins v. HP Inc.*
737 F. Supp. 3d 851 (N.D. Cal. 2024) ................................................................................*Passim*

*I.A.M. Nat. Pension Fund, Ben. Plan A v. Indus. Gear Mfg. Co.,*
723 F.2d 944 (D.C. Cir. 1983) ..................................................................................................... 13

*Kamdem-Ouaffo v. Pepsico, Inc.,*
160 F. Supp. 3d 553 (S.D.N.Y. 2016)........................................................................................... 15

*Layaou v. Xerox Corp.,*
238 F.3d 205 (2d Cir. 2001 ........................................................................................................... 6

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,*
590 U.S. 405 (2020).................................................................................................... 1, 10, 11, 14

*Magi XXI, Inc. v. Stato Della Cita Del Vaticano, Inc.,*
22 F. Supp. 3d 195 (E.D.N.Y. 2014) ............................................................................................ 14

*In re Marsh & McLennan Companies, Inc. Sec. Litig.,*
536 F. Supp. 2d 313 (S.D.N.Y. 2007)............................................................................................ 9

*Massaro v. Palladino,*
19 F.4th 197 (2d Cir. 2021) ................................................................................................... 22, 23

*McBride v. Microdot Salaried Emps. Pension Plan*,
No. 88-cv-7382, 1989 WL 107023 (E.D. Pa. Sept. 12, 1989) .................................................... 21

*McManus v. Clorox Co.*,
No. 23-cv-05325, 2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) ..................................... 18, 19, 24

*Medcalf v. Thompson Hine LLP*,
84 F. Supp. 3d 313 (S.D.N.Y. 2015) ...................................................................................... 10, 12

*Moitoso v. FMR LLC*,
451 F. Supp. 3d 189 (D. Mass. 2020) ........................................................................................ 12

*New York State Nurses Ass'n Benefits Fund Through Buchanan v. Nyack Hosp.*,
46 F.4th 97 (2d Cir. 2022) ("*NYS Nurses Ass'n*") ....................................................... 2, 13, 22, 23

*Osberg v. Foot Locker, Inc.*,
862 F.3d 198 (2d Cir. 2017) ........................................................................................................ 6

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) .............................................................................................. 6, 13, 21

*Perez-Cruet v. Qualcomm Inc.*,
No. 23-cv-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024), *reconsideration denied*,
No. 23-cv-1890, 2024 WL 3798391 (S.D. Cal. Aug. 12, 2024) ..................................... 18, 19, 24

*Pessin v. JPMorgan Chase U.S. Benefits Exec.*,
112 F.4th 129 (2d Cir. 2024) ...............................................................................................*Passim*

*Phillips v. Kidder, Peabody & Co.*,
750 F. Supp. 603 (S.D.N.Y. 1990) .......................................................................................... 9, 10

*Pike v. Freeman*,
266 F.3d 78 (2d Cir. 2001) ........................................................................................................ 11

*Pressroom Unions, Etc. F. v. Continental Assur*
700 F.2d 889, 891-92 (2d Cir. 1983 .......................................................................................... 8

*Proctor v. LeClaire*,
715 F.3d 402 (2d Cir. 2013) ................................................................................................ 11, 12

*Rodriguez v. Intuit Inc.*,
No. 23-cv-05053, 2024 WL 3755367 (N.D. Cal. Aug. 12, 2024) ........................................*Passim*

*Romero v. Allstate Ins. Co.*,
344 F. App'x 785 (3d Cir. 2009) ("*Romero II*") ........................................................................ 14

*Rothstein v. Am. Int'l Grp., Inc.*,
837 F.3d 195 (2d Cir. 2016) ................................................................................ 1

*Sacerdote v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) ............................................................................... 3, 21

*Salerno v. Leica Inc.*, ,
139 F. Supp. 2d 377 (W.D.N.Y. 2001) ............................................................ 14

*Simon v. Allstate Emp. Grp. Med. Plan*,
263 F.3d 656 (7th Cir. 2001) .......................................................................... 13

*Su v. Allen*,
No. 17-cv-784, 2023 WL 6323310 (W.D. Ky. Sept. 28, 2023) ................... 17, 19

*Technomarine Sa v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) ........................................................................... 11

*In re Teltronics Servs., Inc.*,
762 F.2d  185 (2d Cir. 1985) .......................................................................... 12

*Tucker v. Arthur Andersen & Co.*,
646 F.2d 721 (2d Cir. 1981) ........................................................................... 14

*US Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013) ................................................................................. 1, 7, 15

*Util. Audit Grp. v. Cap. One, N.A.*,
No. 14-cv-0097, 2015 WL 1439695 (E.D.N.Y. Feb. 4, 2015),
*rep. and rec. adopted in part, rejected in part on other grounds*,
No. 14-cv-0097, 2015 WL 1439622 (E.D.N.Y. Mar. 26, 2015)) ...........*Passim*

*Walsh v. Allen*,
No. 17-cv-784, 2022 WL 256312 (W.D. Ky. Jan. 26, 2022) ..................... 16, 20

*Yates v. Hendon*,
541 U.S. 1 (2004) .................................................................................... 7, 24

## Statutes

26 U.S.C. § 401(a)(2) ........................................................................................ 19

29 U.S.C. § 1002(21)(A) .................................................................................... 22

29 U.S.C. § 1132(a) ............................................................................................ 8

29 U.S.C. § 1104(a)(1) ........................................................................................... 7, 21

29 U.S.C. § 1104(a)(1)(D) ........................................................................................ 16

29 U.S.C. § 1132(a)(1)(B) ......................................................................................... 21

29 U.S.C. § 1132(d)(1) ................................................................................................. 4

**Other Sources**

2010 Newsletter of the Employee Plans Office of the IRS Tax Exempt & Govt. Entities Div., (Ret. News for Employers, Vol. 7, Spring 2010) ........................................................... 19

Rev. Ruling 71-313, 1971-2 C.B. 203, 1971 WL 26693 (1971) .................................... 20

The Employee Retirement Income Security Act of 1974 ....................................... *Passim*

Stephanie Singh, Gwen DeJesus, Joshua Allen, Raul Morales, Adrian Barrera, Jr., Claire Moore, Patrice Johnson, Nija Winter, and Michael Sutton, ("Plaintiffs"), respectfully submit this Opposition to Defendants'[1] Motion to Dismiss. *See* ECF No. 13 (hereinafter "MTD").

## I. INTRODUCTION

This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA") against Defendants for breaches of their fiduciary duties owed to the Capital One Financial Corporation Associate Savings Plan (the "Plan"). *See* ECF No. 1 ("Complaint" or "Compl."). "ERISA's fiduciary duties of loyalty and prudence are 'the highest duties known to law.'" *Pessin v. JPMorgan Chase U.S. Benefits Exec.*, 112 F.4th 129, 137 (2d Cir. 2024) (quoting *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 208 (2d Cir. 2016)). The Supreme Court and the Second Circuit routinely uphold that "ERISA provides that trustees must act 'solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan.'" *New York State Nurses Ass'n Benefits Fund Through Buchanan v. Nyack Hosp.*, 46 F.4th 97, 110 (2d Cir. 2022) ("*NYS Nurses Ass'n*") (quoting 29 U.S.C. § 1104(a)(1)(D)); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 576–77 (1985) (ERISA is based on trust law, particularly where the fiduciary's duty "is to provide specific benefits to those who are entitled to them in accordance with the terms of a plan."); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013) (similar).

Plaintiffs' claims are simple. Defendants violated their fiduciary responsibilities to the Plan and its participants by using the Plan's assets derived from forfeited funds for the Company's benefit instead of paying Plan expenses that are otherwise charged to the Plan. *See* Compl., at ¶¶

---

[1] "Defendants" collectively refers to the Capital One Financial Corporation, The Board of Directors of Capital One Financial Corporation, Capital One Financial Corporation Investment Committee, and John Does 1-30.

62-98.[2] This conduct constitutes a breach of ERISA's fiduciary duties of prudence, loyalty, monitoring, and ERISA's Anti-Inurement Provision. *See id*.[3] Defendants do not dispute, nor can they, that the Plan documents governing the use of forfeitures state that "all amounts forfeited under the Plan ***shall first be used to pay costs of Plan administration***" before any other usage. *Id*., at ¶¶ 59-60 (quoting Capital One Financial Corporation Associate Savings Plan as Amended and Restated effective January 1, 2015 ("Plan Doc.") at 52, 107). The Summary Plan Description instructs that "[n]o amendment to or termination of the plan" may change this mandate. *Id*., ¶ 62 (quoting Summary Plan Description for Capital One Financial Corporation Associate Savings Plan ("SPD") at 33). However, Defendants improperly used over $42 million to benefit the Company instead of paying the Plan's administrative costs. *See id*., ¶¶ 65-68.

Rather than acknowledge that ERISA law and Plan documents compel fiduciaries to utilize forfeited funds for the benefit of the Plan and its participants, Defendants' arguments rely on material misrepresentations of the Complaint's allegations and the applicable laws. First, Defendants' attempt to argue that *res judicata* applies here. Not so. The prior case Defendants attempt to implicate involved distinct plaintiffs (and their counsel) and materially distinct transactions and an earlier class period. *See* MTD at 1-2, 7-12 (discussing *Hall v. Cap. One Fin. Corp.*, No. 22-cv 00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)).[4] *Hall* was issued more than

---

[2] Forfeitures are the amounts that Capital One made in "matching contributions to participants' individual 401(k) accounts[;]" however, employees who leave before they are "vested" in the matching contributions forfeit those amounts. MTD at 1. The forfeitures are then "placed in the Plan's trust [as] Plan assets." Compl., ¶ 88.

[3] Plaintiffs do not bring their claims under 502(a)(1)(B), so Plaintiffs need not "allege exhaustion of the Plan's administrative claim and appeal process." MTD at 4 n.1.

[4] Because Defendants did not attach the Hall Complaint, as they should, Plaintiffs attach the *Hall* Complaint for the Court's convenience. *See* Exhibit A ("*Hall* Complaint").

a year before this Complaint was filed and centered solely on the performance of one Plan investment, ***not*** forfeitures or Plan administration as alleged in this Complaint. *See Hall*, 2023 WL 2333304. ERISA and Second Circuit caselaw disproves Defendants' arguments that: (1) the Plan is a Plaintiff; and (2) any claim alleging any breaches of fiduciary duties involving the same Plan is sufficiently similar for *res judicata* purposes. *See Coan v. Kaufman*, 457 F.3d 250, 258 (2d Cir. 2006) (ERISA plans cannot be plaintiffs in suits alleging breaches of fiduciary duty and plaintiffs in subsequent litigations cannot be "bound by a [prior] judgment that was reached without his or her involvement."); Compl., n.1 (same); *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 406 (2020) (no *res judicata* for two suits involving "different [assets] and different conduct occurring at different times."); *Util. Audit Grp. v. Cap. One, N.A.*, No. 14-cv-0097, 2015 WL 1439622, at *10-11 (E.D.N.Y. Mar. 26, 2015) (a second breach of fiduciary duty case involving the same parties and "the exact same subject matter […]—that Capital One allegedly mismanaged Plan funds in an unauthorized manner" was not barred by *res judicata*).

Defendants' misrepresentations regarding the merits of Plaintiffs' forfeiture allegations are also unavailing. Contrary to Defendants' assertion, Plaintiffs do not seek a "greater benefit" than what they are owed and the Complaint does not "contradict[] settled law under ERISA and long-standing federal regulations." MTD at 2-3. Plaintiffs allege that Defendants failed to use the forfeitures in the manner mandated by the governing Plan documents pursuant to the "context-specific inquiry that ERISA requires." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740 (2022). Here, the governing Plan documents that impose the intent of Capital One as the settlor-sponsor, "govern[s] the operation of the plan[]" and must be upheld because there is "no inherent inconsistency between ERISA and the interpretation of the trust agreements" or the treasury regulations permitting other ways of allocating forfeitures. *Cent. States*, 472 U.S. 565, 568. Indeed, it is

*Defendants* who ask this Court to violate well settled law. *See* MTD at 1. Simply because the laws permit other uses of forfeitures does not mean that fiduciaries may violate the Plan terms, especially not for the Company's gain at the expense of the Plan. *See Sacerdote v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021). (dismissal was inappropriate, because "[s]imply concluding that [this allocation] is appropriate [in other cases] does not speak to [this] in a particular case."). Plaintiffs plausibly allege that, under the circumstances here, Defendants breached their duties. For these and other reasons set forth below, Defendants' motion should be denied.

## II.    FACTS

### A.    The Plan and the Parties

The Plaintiffs are/were Plan participants and paid administrative fees associated with their Plan accounts, including amounts that should have been offset by the proper use of forfeited funds. *See* Compl., ¶¶ 9-10. Capital One is the Plan sponsor and a named fiduciary. *Id.*, ¶ 20. Capital One, acting through its Board of Directors (together, the "Monitoring Defendants") appointed the Benefits Committee (the "Committee Defendants") to administer the Plan. *Id.*, ¶¶ 21, 24.

The Plan is a "defined contribution" plan within the meaning of ERISA. Compl., ¶ 39. In a breach of fiduciary duty actions under ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1), "the Plan is not a party;" however, "the relief requested in this action is for the benefit of the Plan and its participants." *Id.*, at n.1. Throughout the Class Period, the Plan's assets were held in a trust fund, with the terms stating that "no part of the Trust may be used for, or diverted to, purposes other than the exclusive benefit of the Participants in the Plan or their beneficiaries or the reasonable expenses of Plan administration. No assets of the Plan shall revert to Sponsor, except as specifically permitted by the terms of the Plan." Compl., ¶¶ 56-58 (quoting Trust Agreement, dated April 1, 2019, at 128).

### B.    Forfeitures

#### 1.    Permissible Uses

According to the governing Plan documents, Plan participants may designate a percentage of his/her pre-tax compensation to the Plan, and the Plan also provides for employer matching contributions "to each Participant's Employer Matching Contributions Account." *See* Compl., ¶¶ 45 (quoting Plan Doc. at 20). Participants are "always fully vested" in their own contributions, but for employer contributions, "participants become 100% vested after two years of service." *Id*., ¶¶ 51, 53 (quoting Plan Doc. at 48). Any contributions which do not vest are forfeited. *Id*., ¶ 64. The Plan Doc. mandates that "***all amounts forfeited under the Plan shall first be used to pay costs of Plan administration*** as provided in Section 13.1, and next to reduce and be considered part of Employer Matching Contributions." *Id*., ¶ 59 (emphasis added, quoting Plan Doc. at 52). "No amendment to or termination of the plan will […] allow the return of the plans (sic) assets to the company, or allow the use of the plans (sic) assets for any purpose other than for the exclusive benefit of [P]lan participants (Plan assets may be used, however, to help defray reasonable administrative expenses of the plan)." *Id*., ¶ 62 (quoting SPD at 33).[5]

#### 2.    Defendants' Improper Use of Forfeitures

Contrary to the language governing the Plan and in violation of their fiduciary duties to Plan participants, throughout the Class Period, Defendants continuously used forfeited amounts, which are Plan assets, for the Company's own benefit to reduce future Company contributions instead of using the funds to benefit Plan participants by paying Plan administrative costs. Compl., ¶ 65. Defendants caused Plan participants to incur at least $42 million in expenses that could

---

[5] A "'SPD'—[is] a document that 'ERISA contemplates ... will be an employee's primary source of information regarding employment benefits.'" *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 204 (2d Cir. 2017) (quoting *Layaou v. Xerox Corp.*, 238 F.3d 205, 209 (2d Cir. 2001)).

otherwise have been covered in whole or in part by forfeited funds. *Id.*, ¶¶ 66-68. In fact, in 2021, 2022, and 2023, $0 were used to offset Plan costs despite millions of dollars sitting in the Plan's Forfeiture Account; instead millions of dollars were used to offset employer contributions. *Id.*

## III.    ARGUMENT

### A.    Standard of Review

"In reviewing a motion to dismiss, '[courts] accept the [] Complaint's well-pleaded factual allegations as true and construe them in the Plaintiff['s] favor.'" *Pessin*, 112 F.4th at 136 (quoting *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.,* 92 F.4th 381, 390 (2d Cir. 2024)). The Supreme Court mandates that courts must evaluate ERISA breach of fiduciary duty complaints using a "context-specific inquiry" and consider the "allegations as a whole." *Hughes*, 142 S. Ct. at 704, 742. "Even when the alleged facts do not 'directly address[ ] the process by which the Plan was managed,' a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 596 (8th Cir.2009)). This is because, "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Id.* (quoting *Braden,* 588 F.3d at 598). Critically, ERISA does not grant fiduciaries a "defense-friendly standard," meaning there is no "presumption of prudence." *Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014).

"ERISA § 404(a) provides that 'a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Pessin*, 112 F.4th at 136-37 (quoting 29 U.S.C. § 1104(a)(1)). "The purpose of [ERISA's] anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." *Yates v. Hendon*, 541 U.S. 1, 23 (2004). Lastly, ERISA mandates that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument" and fiduciaries "must act in accordance with the documents and instruments governing the plan insofar as they accord with" ERISA. *U.S. Airways*, 569 U.S. at 101 (internal citations omitted).

### B.  *Res Judicata* Does Not Apply Here

Defendants incorrectly argue that *res judicata* bars the instant Complaint because another complaint advancing different breach of fiduciary allegations was previously filed against Defendants by different plaintiffs in another district. *See* MTD at 7-12 (discussing *Hall v*, 2023 WL 2333304). "To prove the affirmative defense [of *res judicata*] a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Technomarine Sa v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014). Plaintiffs here do not advance investment underperformance allegations like *Hall*, and there were no forfeiture or imprudent plan administration allegations in *Hall*. Further, Defendants admit that the *Hall* class period ends before the instant class period ends, and "the precise Plan assets in question might be different in the two cases." MTD at 9 (they are different). Defendants have not met their burden for proving the second and third elements of *res judicata*.

In fact, in *Util. Audit Grp. v. Cap. One, N.A.*, the court held that *res judicata* did not apply

even though the parties were the same and "allegations in the prior action center on the exact same subject matter as their current action—that Capital One allegedly mismanaged Plan funds in an unauthorized manner." *Util. Audit Grp.*, 2015 WL 1439622, at **10-11 (internal citations omitted). Here, *res judicata* is even less applicable than *Util. Audit Grp*., because this case involves: (1) entirely different plaintiffs, (2) different transactions implicating different governing Plan documents, and (3) *Hall* was filed in 2022, meaning that events and discovery central to this case did not exist when *Hall* was filed.

### 1.    The Distinct Plaintiffs

Under ERISA, *res judicata* does not prohibit a different plaintiff from bringing suit on behalf of the same plan, against the same defendants, and "recovering monetary relief that duplicates the relief granted in the prior action." *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991). Plaintiffs did not participate in the *Hall* action. Defendants attempt to argue, incorrectly, that for "the purposes of party privity, differences among the individually named class members are irrelevant since both *Hall* and the current action are brought on behalf of the same plaintiff: the Plan." MTD at 9. The Second Circuit has foreclosed Defendants' privity argument. *See Beck,* 947 F.2d at 642. Congress and the Second Circuit has expressly held that "in a breach of fiduciary duty action such as this, ***the Plan is not a party***" because Plaintiffs seek "equitable relief pursuant to 29 U.S.C. § 1132(a)" and §502 of ERISA. Compl., n. 1 (emphasis added), ¶ 75. In *Pressroom Unions, Etc. F. v. Continental Assur*, the Second Circuit held that "§ 1132(a), the Act's provision dealing with standing, states that the Secretary or a 'participant, beneficiary or fiduciary' may bring an action for civil enforcement of the Act's fiduciary and other provisions" which is an exhaustive list of potential plaintiffs. *Pressroom Unions*, 700 F.2d 889, 891-92 (2d Cir. 1983). Thus, ERISA does not "authorize a [plan] to assert a cause of action." *Id*., at 893; *see also Coan*, 457 F.3d at 258

8

("ERISA plans cannot bring suit against fiduciaries on the plans' own behalf under section 502."). Thus, the individual *Hall* plaintiffs could not be in "privity" with the Plan as plaintiff because the Plan cannot be, and is not alleged to be, a plaintiff.

Defendants have no support for their argument that plaintiffs seeking to bring a case "in a representative capacity on behalf of the plan" implicates privity. MTD at 8-9. Privity and *res judicata* were not discussed in Defendants' arbitration clause cases of *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021); *Cedeno v. Sasson,* 100 F.4th 386 (2d Cir. 2024)). However, *Coan* contemplated the ramifications of *res judicata* in breach of fiduciary duty claims, explaining that, "[i]f a participant in the [same] plan who is not included in this action were to bring a subsequent lawsuit against the defendants regarding the same alleged breach of fiduciary duty" and "privity and therefore preclusion were found, the second participant would be bound by a judgment that was reached without his or her involvement or reliable safeguards for his or her interests[,]" which would be a due process violation. *Coan*, 457 F.3d at 262 (citing *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 801-02 (1996)).

Of course, because *Hall* was dismissed before a class was certified, the *Hall* plaintiffs never "demonstrate[d] their suitability to serve as representatives of the interests of other plan stakeholders" as required under *Coan* and Rule 23. *Cooper*, 990 F.3d at 184. Merely attempting to bring a suit in a representative capacity is insufficient to establish that a party was "***vested*** with the authority of representation" as required for privity. *Alpert's Newspaper Delivery Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989) (emphasis added); *see also Phillips v. Kidder, Peabody & Co.*, 750 F. Supp. 603, 607 (S.D.N.Y. 1990) (the court did not "certify a plaintiff class with respect to those claims[,]" therefore the plaintiffs were not vested with representative authority for privity purposes); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 536 F. Supp.

2d 313, 318 (S.D.N.Y. 2007) ("appointment of lead plaintiffs under the PSLRA alone is insufficient to demonstrate privity for *res judciata* purposes."); *Coan*, 457 F.3d at 262.

It is of no moment that Defendants are the same here as in *Hall*, because the differing plaintiffs means that the second prong of *res judciata* is unsatisfied. Thus, the Court may end its analysis here. *See Phillips*, 750 F. Supp. at 608 (without identical "identity of parties, the Court need not address the second element, identity of claims between the two litigations.").

### 2. The Claims in *Hall* Were Too Distinct

### i. The Allegations are Fundamentally Different

"Because the two suits here involved different [assets] and different conduct occurring at different times, they did not share a 'common nucleus of operative facts'" and thus, there is no preclusion. *Lucky Brand*, 590 U.S. at 406. The time frame, alleged misconduct, and the injured Plan assets are "different in the two cases." MTD at 9. Defendants unpersuasively attempt to characterize the instant case and *Hall* as advancing the same allegations "'cloaked' with different theories of liability." MTD at 9 (quoting *Andrews-Clarke v. Lucent Techs., Inc.*, 157 F. Supp. 2d 93, 102 (D. Mass. 2001)). However, unlike the "virtually identical" allegations in *Andrews-Clarke* (157 F. Supp. 2d at 102), Defendants can only liken *Hall* to the instant Complaint to the extent that both cases "alleged mismanagement or misuse of [different] Plan assets" and "share the same 'origin': the Plan and ERISA fiduciary duties." *Id.* at 9-10. "This recitation, however, describes the facts asserted too summarily and in the process mischaracterizes the Amended Complaint." *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 326 (S.D.N.Y. 2015). As courts in this Circuit routinely hold, general aspects found in all ERISA breach of fiduciary duty cases are not sufficiently similar for *res judicata* to apply. As explained in *Frulla v. CRA Holdings, Inc.*:

> [T]he instant case may, like [the previous action], require evaluation of the
> terms of the Plan and the Agreed Judgment to determine if the activities

> in which defendants allegedly engaged constitute breaches of fiduciary duty. However, because the claims and facts underlying the claims are different, the instant suit is not precluded simply because it may also require an examination of the Agreed Judgment or Plan. Similarly, even though Frulla's ultimate subjective goal—to secure, for the long term, the benefits to which he claims he is entitled—may be the same in both suits, that is not sufficient to preclude him from bringing his fiduciary duty claims in a separate suit.

*Frulla, Inc.,* 596 F. Supp. 2d 275, 282 (D. Conn. 2009); *see also Beck,* 947 F.2d at 640-41 (a second suit alleging the same "self-dealing and breach of their fiduciary obligations" and "rel[ying] on the same evidence" was not barred); *Util. Audit Grp.*, 2015 WL 1439622, at *10.

### ii.    The Second Circuit's Transaction Test

Defendants incorrectly argue that the third prong of *res judicata* is satisfied because "[t]he 'facts necessary to support the claims before [the Court] now were pleaded, or could have been pleaded'" in *Hall*. MTD at 12 (quoting *In re Teltronics Servs., Inc.*, 762 F.2d at 193). However, the Second Circuit's "'same transaction' test indicates, the 'could have been' language of the third requirement is something of a misnomer." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001). In fact, "the question is whether the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." *Id.* (emphasis in original). Relatedly, "[i]f the second litigation involve[s] *different* transactions, and *especially subsequent* transactions, there generally is no claim preclusion." *Proctor v. LeClaire*, 715 F.3d 402, 412 (2d Cir. 2013) (emphasis in original; citations omitted). Here there are different and subsequent transactions that could not have been brought in *Hall*.

First, forfeiture allegations were not brought in *Hall*. Simply because forfeiture and performance allegations were brought together in other cases (*see* MTD at 11) does not mean they always *should* be, or even that they rely on the same discovery, exact time period, and underlying transactions. *See Frulla*, 596 F. Supp. 2d at 280; *Pike*, 266 F.3d at 91. Of course, other complaints

11

are irrelevant under the "context-specific inquiry that ERISA requires." *Hughes*, 142 S. Ct. at 740. Indeed, the portion of the magistrate's *res judicata* decision in *Util. Audit Grp.,* from this Circuit, demonstrates that investment allegations and fee allegations do not need to be brought together. *See Util. Audit Grp. v. Cap. One*, *N.A.*, No. 14-cv-0097, 2015 WL 1439695, at *10 (E.D.N.Y. Feb. 4, 2015), *rep. and rec. adopted in part, rejected in part on other grounds*, No. 14-cv-0097, 2015 WL 1439622 (E.D.N.Y. Mar. 26, 2015) ("The [previous] action involved allegations that defendants effected an investment change without plaintiffs' authorization or consent" whereas the second action involved "defendants['] engage[ment] in unauthorized expenses and fees."). As seen in *Novo Nordisk*, the transactions in performance claims involve "specific methodologies used to select prudent investments" and "industry-accepted benchmarks." *Fumich v. Novo Nordisk Inc.*, No. 24-cv-09158, (D.N.J. Sept. 13, 2024), ECF No. 1, at ¶¶ 88, 104; *see also Hall*, 2023 WL 2333304, at *6.[6] On the other hand, transactions underlying forfeiture claims dissimilarly involve "a choice on how to utilize forfeited amounts" and "the balance in the Plan's forfeiture accounts." *Id.*, ¶¶ 162-63; *see also* Compl., at ¶¶ 59-60. "Thus, the instant Complaint does not merely assert new legal theories; it presents claims that must [out] of necessity require consideration of facts beyond those that formed the basis for [*Hall*]." *Medcalf*, 84 F. Supp. 3d at 327.

Second, "[c]laim preclusion generally 'does not bar claims that are predicated on events that postdate the filing of the initial complaint.'" *Lucky Brand*, 590 U.S. at 414; *see also Proctor*, 715 F.3d at 412 ("Acts committed after the filing of the complaint are not within the scope of the plaintiff's claim."). Because discovery required for this case occurred "after the prior action ended, it clearly could not have been discovered earlier with due diligence." *Util. Audit Grp*., 2015 WL

---

[6] Notably, the separate investment performance section in *Novo Nordisk* is not even immediately before or after the forfeiture section. *See Fumich v. Novo Nordisk Inc.*, No. 24-cv-09158, (D.N.J. Sept. 13, 2024), ECF No. 1, at sections VII.A-B, E.

1439622, at *11. This includes the annual Form 5500s, meeting minutes, forfeiture balance account statements, and other discovery that materialized for the years 2022 and onward. *See*, *e.g.*, *Simon v. Allstate Emp. Grp. Med. Plan*, 263 F.3d 656, 658 (7th Cir. 2001) (no *res judicata* "because the alleged breach [of fiduciary duties] occurred in 1998, well after Simon filed his previous suit."); *I.A.M. Nat. Pension Fund, Ben. Plan A v. Indus. Gear Mfg. Co*., 723 F.2d 944, 948 (D.C. Cir. 1983) (no *res judicata* where "the instant suit alleges the inaccuracy of contributions for the audited period " after the consent decree); *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 203 (D. Mass. 2020) ("Fidelity's duty of continual monitoring, combined with its failure to monitor, means that the claims in the case at hand do not arise out of the same transaction or series of connected transactions."). *Hall's* earlier time period precludes *res judicata*.

### iii.        Differing Discovery

Because the instant allegations are different from *Hall*, "[t]he relevant documents (e.g., the Plan documents) and witnesses (e.g., the Plan committee)" are not "precisely the same." MTD at 10. First, the relevant Plan document in *Hall* was the Investment Policy Statement (*see* Hall Complaint, ¶ 45) unlike the documents relevant here."[7] Compl., ¶¶ 55-62. Likewise, Defendants have not shown that the members of the Plan Committee were exactly the same for the entire Class Period as in *Hall*, nor that there will be no other witnesses. In fact, the *Hall* Complaint, like the instant Complaint did not even list "the membership of the Administrative Committee and the identities of any other fiduciaries [because they] are not publicly available." *Hall* Complaint, ¶ 14; *see also* Compl. ¶ 19. Further, both Complaints reference a few overlapping years of Form 5500s, but for different reasons, and the instant Complaint includes Form 5500 years that did not exist

---

[7] The Plan Doc. dictates in what order the *forfeitures* will be used (Compl., ¶ 59), whereas Investment Policy Statements "prescribe[]" the "fiduciary *investment* monitoring process." *Hall* Complt., ¶ 45 (emphasis added).

when *Hall* was filed. *See* MTD at 12; *see also* Compl., ¶ 66. "The fact that several operative facts may be common to successive actions between the same [or different] parties does not mean that a judgment in the first will always preclude litigation of the second." *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727 (2d Cir. 1981); *see also Romero v. Allstate Ins. Co.*, 344 F. App'x 785, 794 n.12 (3d Cir. 2009) ("*Scott* addressed different pension plan amendments than those at issue here" and "[t]he claims at issue in [here] go directly to the substance of the amendments at issue.").

Defendants' cases, neither of which are ERISA cases, are inapposite because the precluded actions involved the same plaintiffs and same disputed agreements or class of agreements. *See* MTD at 10; *see Salerno v. Leica Inc*., 139 F. Supp. 2d 377, 380 (W.D.N.Y. 2001) (the complaints centered on the same severance agreement); *Magi XXI, Inc. v. Stato Della Cita Del Vaticano*, *Inc.*, 22 F. Supp. 3d 195, 198 (E.D.N.Y. 2014) ("the acts that induced Plaintiff to enter into both sets of sublicense agreements substantially overlap" in the "fraud and breach of contract claims."). On the other hand, "the two suits here were grounded on different conduct, involving different [transactions], occurring at different times" and brought by different plaintiffs. *Lucky Brand*, 590 U.S. at 413 "They thus did not share a 'common nucleus of operative facts.'" *Id*. (quoting Restatement (Second) § 24, Comment b, at 199). Defendants have not met their burden of proving that *Hall* is substantially related to this case for their *res judicata* defense to apply.

### 3.    The Plan is Not a Contract

Defendants' third argument is incorrectly premised on the idea that "ERISA-governed plans are contracts" and a "claim under § 1132(a)(1)(B), in essence, is the assertion of a contractual right." MTD at 11 n.4 (quoting *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002)). Defendants misrepresent *Feifer*. The "plan terms" under dispute in *Feifer* were an actual "document describ[ing] long-term disability benefits[,]" not the plan itself. *Feifer,* 306 F.3d at

1207. Indeed, "the term 'plan' in the statute means nothing more than 'a scheme decided upon in advance.'" *Id.* (quoting *Pegram v. Herdrich,* 530 U.S. 211, 223 (2000)). Likewise, "Retirement plan documents are similar to both trusts and contracts" not the Plan as an entity. *Amara v. CIGNA Corp.*, 775 F.3d 510, 524 (2d Cir. 2014). Nonetheless, there are no breach of contract claims here.

Strangely, Defendants argue that the Plan is both a plaintiff and a contract, but do not explain how it can be both. *See* MTD at 9, 11. Of course, the Plan is neither. This moots Defendants' argument "that multiple claims based upon a single contract are considered part of the same transaction, unless the plaintiff could not have asserted a claim in the original action." MTD at 11 (quoting *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 564 (S.D.N.Y. 2016)).Yet, as Defendants admit, *Kamdem-Ouaffo* was not an ERISA case and involved two cases "arising out of" the same "employment contract" with the same parties. MTD at 11-12. Defendants have not met their burden of showing that *res judicata* bars this litigation, nor could they.

## C.    Defendants Violated the Plan Document in Contravention of ERISA

Defendants' arguments regarding the merits of this case are an attempt to evade "ERISA's requirements that employee benefit plans be put in writing, 29 U.S.C. § 1102, and that fiduciaries comply with the written documents serve to protect the participants and the beneficiaries." *Dardaganis v. Grace Cap. Inc.*, 889 F.2d 1237, 1241 (2d Cir. 1989). These written instruments "govern the operation of the plan[]" so long as there is "no inherent inconsistency between ERISA and the interpretation of the trust agreements." *Cent. States*, 472 U.S. 565, 568; *see also U.S. Airways*, 569 U.S. at 101.[8] The governing Plan document clearly states that "all amounts forfeited under the Plan *shall first be used to pay costs of Plan administration*." Compl., ¶ 59. This mandate

---

[8] A "failure to abide by the plan documents is [] necessarily a breach of duty" regardless of whether it involved "conduct that was not prudent under the circumstances." *Dardaganis*, 889 F.2d at 1240.

is not inconsistent with ERISA's mandate that fiduciaries act "solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan." *NYS Nurses Ass'n*, 46 F.4th at 110 (quoting 29 U.S.C. § 1104(a)(1)(D)).

In fact, in a case brought by the Department of Labor, *Walsh v. Allen,* the court sided with the secretary of labor's reliance on that plan's governing documents, because "[i]f sponsors commit that 'Forfeitures will be used to pay Plan expenses,' then the forfeitures must be used to pay Plan expenses." *Walsh*, No. 17-cv-784, 2022 WL 256312, at *4 (W.D. Ky. Jan. 26, 2022). The use of the word "shall" has the same affect here. In a similar case, *Rodriguez v. Intuit Inc.*, the plan language also stated that "forfeitures under the Plan, shall be applied, at the Company's election, to: (i) pay expenses of administering the Plan; (ii) with respect to forfeitures of Matching Contributions…" *Rodriguez*, No. 23-cv-05053, 2024 WL 3755367, at *2 (N.D. Cal. Aug. 12, 2024). The court held that "[t]he complaint plausibly alleges that Intuit acted in contravention of ERISA's mandate to provide benefits solely in the interest of participants and beneficiaries when it chose to use forfeitures to reduce its own contributions during the class period" particularly "[b]y both ***violating the terms of the Plan Document*** and their duties under the statute." *Rodriguez*, 2024 WL 3755367, at *5 (emphasis added); *see also id.*, at *6 (this is "a plausible interpretation of the Plan Document.").

Rather than discuss the mandate in the Plan documents, Defendants misrepresent the Complaint's allegations. Plaintiffs do not argue that "Capital One should be forced to grant them an even greater contribution than the Plan provides[,]" nor that ERISA and Congress "require employers to pay, or otherwise subsidize, a plan's administrative expenses." MTD at 13. Based on the Plan language *here*, the Plan, and Plaintiffs, are entitled to have forfeitures offset the costs of Plan administration before any residual is used for the Company's benefit. *See* Compl., ¶ 59.

Plaintiffs' theory aligns with ERISA and "Congress' instruction that plan sponsors should carry out their fiduciary duties in accordance with governing plan documents." *Su v. Allen,* No. 17-cv-784, 2023 WL 6323310, at *2 (W.D. Ky. Sept. 28, 2023) (approving and entering a consent order for the defendants to restore "forfeited funds the Secretary [of labor] says should've gone into [participant] accounts."). Because Plaintiffs do not advance the "'greater benefit' theory" that Defendants claim they do, Defendants' arguments and caselaw in support of their defense is inapplicable. MTD at 13.

Defendants argue that "Plaintiffs do ***not*** allege that the Plan's administrative costs were unreasonable" and then undermine their argument by admitting that Plaintiffs "allege that Capital One should have paid those costs instead of Plan participants." MTD at 14 (emphasis in original). However, the amount of fees charged by service providers is not relevant, whereas the amount of fees the Plan participants paid was unreasonable in light of the fact that the forfeitures were designated to offset these fees. *See* Compl., ¶ 68. The fact that ERISA generally permits using forfeitures and paying plan expenses in a number of ways does nothing to resolve the issue that Defendants failed to use forfeitures under the provisions of the Plan in *this case*. *See* MTD at 13, 15; *see also Hughes*, 142 S. Ct. at 740.

Plaintiffs' theory of liability, premised on the Plan language, makes Defendants' cases materially distinguishable. Defendants rely on *Hutchins v. HP Inc.* (*see* MTD at 14); however, *Hutchins* held that plaintiffs ***can*** bring claims that forfeitures were impermissibly used for offsetting employer contributions rather than properly used to pay for administrative fees, if, like here the plaintiffs' allegations are "based on more particularized facts or special circumstances." 737 F. Supp. 3d 851, 864 (N.D. Cal. 2024). As Defendants' own quote demonstrates, *Hutchins* was dismissed because that "Plan does not provide any such benefit, and Plaintiff does not allege

any facts showing that he is entitled to such a benefit." *Id.* at 14-15 (quoting *Hutchins,* 737 F. Supp. 3d at 863). Unlike here, the plan language in *Hutchins* prioritized employer contributions over plan expenses and gave the fiduciaries "discretionary authority" over forfeitures. *See Hutchins*, 737 F. Supp. 3d at 856-57 ("the Plan provides that forfeited amounts *may* be used to 'reduce employer contributions'" before other uses.). Notably, in another recent case out of the same Circuit, *Perez-Cruet v. Qualcomm Inc.*, the plan document granted the defendants "a choice" on how to use forfeitures, but based on the narrow "context" of those allegations, the plaintiffs plausibly alleged that "the Defendants' choice allegedly harmed the participants by letting the administrative expense charge fall on the participants rather than the employer." *Perez-Cruet*, No. 23-cv-1890, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024), *reconsideration denied*, No. 23-cv-1890, 2024 WL 3798391 (S.D. Cal. Aug. 12, 2024).

Defendants' other citations are unpersuasive for the same reason. *See* MTD at 15, 18. Unlike here those plaintiffs' "theory of fiduciary liability was too broad to be plausible" and was not narrowly based on those plans' language. *Dimou v. Thermo Fisher Sci. Inc.,* No.: 23-cv-1732, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024); *see also McManus v. Clorox Co*., No. 23-cv-05325, 2024 WL 4944363, at *6 (N.D. Cal. Nov. 1, 2024); ("Plaintiff's broad assertion, here, that it is necessarily a fiduciary breach to use participant money to pay administrative costs instead of forfeited amounts" where that plan had discretionary language). All three of Defendants' cases granted the plaintiffs leave to amend their fiduciary duty claims related to their forfeiture allegations, precisely because ERISA does permit such a claim. *See McManus*, 2024 WL 4944363, at *6; *Dimou,* 2024 WL 4944363, at *5; *Hutchins,* 737 F. Supp. 3d at 864. Thus, while Defendants' cases broadly alleged "that a failure to use forfeited contributions to pay administrative costs is *always* a violation of ERISA" (*Hutchins,* 737 F. Supp. 3d at 856; emphasis added), the instant

case, like *Perez-Cruet* and *Rodriguez*, properly alleges Defendants' committed breaches under the "particular context" of the Plan's language here. *Rodriguez*, 2024 WL 3755367, at *7.

### D.    The Tax Code Permits Plaintiffs' Claims

Under ERISA, it is the Supreme Court's mandate and "Congress' instruction that plan sponsors should carry out their fiduciary duties in accordance with governing plan documents[,]" including how to use forfeitures. *Su*, 2023 WL 6323310, at *2. This moots Defendants' arguments pertaining to the tax code and their statement that "there is nothing improper about allowing such forfeitures to be used to fund other benefits." MTD at 15; *see also Su*, 2023 WL 6323310, at *2. Defendants correctly state that, "[m]uch like ERISA, the Tax Code also mandates that assets in a tax-qualified trust must not be 'used for, or diverted to, purposes other than for the exclusive benefit of the employees and beneficiaries for whom the trust is established." MTD at 16 (quoting 26 U.S.C. § 401(a)(2); *see also* 26 C.F.R. § 1.401 2). Defendants' discussion of various Tax Code provisions and Treasury regulations does nothing more than echo the undisputed fact that under the IRS's "guidance" "forfeitures '*may be used to pay for a plan's administrative expenses* and/or to reduce employer contributions.'" MTD at 17 (quoting 2010 Newsletter of the Employee Plans Office of the IRS Tax Exempt & Govt. Entities Div., at 4-5 (Ret. News for Employers, Vol. 7, Spring 2010)).

Critically, simply because "Treasury regulations and [ERISA] would generally permit employers to structure plans to allow forfeitures to cover contributions does not establish that [Defendants'] implementation by using forfeitures to offset its mandatory Matching Contributions within the parameters of this specific Plan." *Rodriguez*, 2024 WL 3755367, at *8. Plaintiffs do not dispute that "the permissible use of forfeitures in defined contribution plans" includes "pay[ing] plan administrative expenses" and "reduc[ing] employer contributions under the plan; or (iii) [t]o

increase benefits in other participants' accounts ***in accordance with plan terms***." MTD at 18 (quoting 88 Fed. Reg. at 12285 (emphasis added)). That is the case here where the Plan mandates that the forfeitures originally intended to increase the retirement funds of former participants be used "to pay [P]lan administrative expenses" thereby "increase[ing] benefits in other participants' accounts" because they will be paying less in administrative fees. *Id.* ERISA and the Tax Code's permissible use of forfeitures under the circumstances of other plans (*see* MTD at 15-20) has no bearing on the facts of *this case* and the "context-specific inquiry that ERISA requires." *Hughes*, 142 S. Ct. at 740; *see also Rodriguez*, 2024 WL 3755367, at *7; *Walsh*, 2022 WL 256312, at *4. Thus, contrary to Defendants' mischaracterization, Plaintiffs do not theorize "that the Treasury Department continues to authorize a practice that simultaneously constitutes a *per se* violation of ERISA." MTD at 18.

Strangely, Defendants cite a 1971 Revenue Ruling ***that does not apply to defined contribution plans like the Plan***, when permitting forfeitures to be allocated under a different "formula" then what is "contained in the plan." MTD at 17 (quoting Rev. Ruling 71-313, 1971-2 C.B. 203, 1971 WL 26693 (1971)). The Ruling expressly states that this exception pertains solely to "profit-sharing and stock bonus plans[,]" whereas separate sections instruct that, for other plan types, the participants must receive the benefits bestowed "under the plan." Rev. Rul. 71-313, 1971 WL 26693; *see also Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1488 (D.S.C. 1991) (noting that the same 1971 ruling was outdated and "the regulations thereunder require forfeitures to be handled differently depending upon the type of pension plan at issue."); *McManus*, 2024 WL 4944363, at *3 (same). Also, like the court in *McManus* (MTD at 18-19), plaintiffs do not dispute the meaning behind the recent "proposed Treasury regulation[,]" but find it "is of little value" to the case here. *McManus*, 2024 WL 4944363, at *3 (also nothing that the proposed regulation "applies only to

plan years beginning on or after January 1, 2024."). Further, Defendants concede their other case, *McBride v. Microdot Salaried Emps. Pension Plan*, involved "a vesting issue[,]" not the same proposed treasury regulation, nor the use of forfeitures. MTD at 19; (quoting *McBride*, No. 88-cv-7382, 1989 WL 107023, at *2, n.9 (E.D. Pa. Sept. 12, 1989)).

After admitting that ERISA has the same "exclusive-purpose requirement" as the Tax Code (MTD at 16), Defendants argue that "*none* of the ERISA provisions Plaintiffs cite say anything about forfeitures." MTD at 19 (emphasis in original). Actually, rather than delineate any exhaustive, specific claim requirements, ERISA's broadly worded provisions permit plaintiffs to bring suits against fiduciaries who did not act in a manner in accordance with the Statue "'***under the circumstances*** then prevailing.'" *Pension Benefit Guar. Corp.*, 712 F.3d at 716 (quoting 29 U.S.C. § 1104(a)(1)(B); emphasis added); *see also Cent. States*, 472 U.S. at 570 ("[R]ather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility" under ERISA.).[9] Thus, "ERISA's fiduciary and anti-inurement provisions" do not solely "address conduct distinct from the actions challenged here." MTD at 19. The use of forfeitures is conduct that is covered by ERISA's fiduciary duties of prudence, loyalty, and anti-inurement provisions.

### E.    Capital One Acted as a Fiduciary With Respect to Forfeitures

"Capital One is the Plan sponsor and a named fiduciary for the Plan" and they "exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets." Compl., ¶¶ 20, 78. Defendants do not dispute that Capital One is

---

[9] *See also Pessin*, 112 F.4th at 142–43 ("the JPMC Benefits Executive may not have been under a duty to provide Pessin with a Benefit Statement, but once it did so, it was obligated to provide a Benefit Statement that accurately reflected his total benefits accrued."); *Sacerdote*, 9 F.4th at 111 ("Simply concluding that revenue sharing is appropriate [under ERISA] does not speak to how the revenue sharing is implemented in a particular case.").

a named fiduciary, or that the Committee is/was a fiduciary under ERISA. Capital One must adhere to "the trust agreement to which the employer is bound." *NYS Nurses Ass'n*, 46 F.4th at 114. Further, Capital One's fiduciary functions as Monitoring Defendants included ensuring that that the Committee Defendants were adequately performing their fiduciary obligations. *Id.*, ¶ 94. The Complaint does not "challenge[] Capital One's plan design decisions" as a settlor or "only non-fiduciary decisions." MTD at 20, 21. Again, Defendants' argument rests on a misstatement of Plaintiffs' allegations and the relevant law. Plaintiffs allege that, when acting in a fiduciary capacity, Capital One, as a fiduciary, failed to carry out the mandatory Plan design decisions.

It is true that Capital One acted as a settlor when it decided "to offer a plan—as well as related decisions over its terms" including its mandate on how to use forfeitures. MTD at 20. In discussing how one entity can be both a fiduciary and a settlor, the Second Circuit reiterated the Supreme Court's instruction "that 'trustee[s] under ERISA . . . wear different hats,' but ERISA requires 'that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions.'" *Massaro v. Palladino*, 19 F.4th 197, 211–12 (2d Cir. 2021) (quoting *Pegram*, 530 U.S. at 225). That is the case here where Capital One impermissibly failed to act as a fiduciary when making fiduciary decisions. The Court in *Massaro* relied on the same case as Defendants, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), to explain that:

> Section 3(21)(A) of ERISA states that "**a person is a fiduciary**" for the purposes of ERISA "***to the extent ... he exercises any discretionary authority or discretionary control*** respecting management of such plan or exercises any authority **or control respecting management or disposition of its assets**." 29 U.S.C. § 1002(21)(A). By contrast, a trustee or other plan administrator acts as a **"settlor"** when he "**makes a decision regarding the *form or structure* of the [p]lan such as who is entitled to receive [p]lan benefits and in what amounts…**

*Massaro*, 19 F.4th at 212 (emphasis added; quoting *Hughes Aircraft*, 525 U.S. at 444).[10]

Plaintiffs do not "complain that Capital One should be required to contribute more to the Plan than it already has." MTD at 21. "Rather than challenging any decision regarding the design of the Plan (which would be a settlor function), [Plaintiffs] challenge[] [Capital One's] 'decisions regarding how to apply forfeited contributions *after* they have been paid to the Plan and have become 'plan assets.'" *Rodriguez*, 2024 WL 3755367, at *5; *see also id.* ("Although Intuit's decision about how to allocate those plan assets undoubtedly effected (sic) the amount it would contribute as settlor each year, by the Plan's own terms it was making decisions about the management and disposition of plan assets. As such, it acted in a fiduciary capacity when making those decisions."). This accords with basic trust law on which ERISA is interpreted. *See, e.g., NYS Nurses Ass'n*, 46 F.4th at 111; *Cent. States*, 472 U.S. at 570. Capital One's "decision to allocate forfeited amounts is a fiduciary, as opposed to a settlor, function" while Capital One's "decision to include a Plan term stating that forfeited amounts [must] be used to reduce employer contributions […] is a settlor decision." *Hutchins*, 737 F.Supp.3d at 860. Capital One, acting as a fiduciary, breached its duties to the Plan.

### F.    Defendants Violated ERISA's Anti-Inurement Provision

Defendants' violation of the governing Plan documents is intertwined with their violation of ERISA's anti-inurement provision, because all forfeited funds that were placed in the Plan's trust (as Plan assets) were used by the Company to defray its own contributions in order to save itself millions of dollars while there was no surplus of forfeitures after paying Plan expenses. Compl., ¶¶ 55-57, 87-89. In some years, the forfeitures were only used to offset company

---

[10] Defendants' reliance on *Coulter v. Morgan Stanley & Co. Inc*., issued before *Massaro*, is inapposite. In *Coulter*, it was "undisputed that Defendants were not named fiduciaries under the Plans." *Coulter*, 753 F.3d 361, 366-67 (2d Cir. 2014).

contributions. *Id.* "The purpose of the anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is ***to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers*** and others." *Yates*, 541 U.S. at 23 (emphasis added); *see also* MTD at 22 ("the anti-inurement provision focuses on the removal or 'diversion' of assets from a plan."). Thus, "using plan assets to offset future contributions" was a breach because it "diverts assets from the Plan" for impermissible company uses. MTD at 22. Unlike Defendants' cases involving "a higher sale price of a business" (*id.*), cases involving forfeitures recognize that "nonvested employer contributions may not be used to benefit the employer/fiduciary by reducing its own financial burden […] when done at the expense of not defraying the administrative costs borne by participants." *Perez-Cruet*, 2024 WL 2702207, at *6; *see also Rodriguez*, 2024 WL 3755367, at *8. Defendants' application of *Hughes Aircraft* is misplaced because, "[u]nlike in *Hughes* [*Aircraft*], the plaintiff here *does* allege that the Company used 'assets for a purpose other than to pay its obligations to the Plan's beneficiaries'. [Plaintffs] allege[] that [Capital One] used Plan assets 'to reduce its future matching contributions,' and 'sav[e] the Company millions of dollars each year at the expense of the Plan.'" *Rodriguez*, 2024 WL 3755367, at *8; *see* Compl., ¶¶ 59, 65-68, 89 (alleging the same).

Again, Defendants' cases are unhelpful because their holdings relied on materially distinguishable plan language. *See* MTD at 22; *McManus*, 2024 WL 4944363, at *7 (the forfeitures were not "funds to which plaintiff is not entitled *under the Plan language*"); *Barragan v. Honeywell Int'l Inc.*, No. 24-cv-4529, 2024 WL 5165330, at *6 (D.N.J. Dec. 19, 2024) (no anti-inurement where the funds "are used to satisfy Honeywell's obligations *according to the Plan's language*."); *Hutchins*, 737 F.Supp. 3d at 867 (the anti-inurement claims were insufficient "*without support in the terms of the Plan*."); *Dimou*, 2024 WL 4508450 at *10. However, the court in

*Hutchins* explained that anti-inurement claims may be alleged when the diverted monies were used to pay "amounts owed by the defendants." *Hutchins*, 737 F.Supp.3d at 865, 867. That is the case here where the forfeitures used to offset employer contributions were not surplus but rather were owed to the Plan to offset administrative costs *first*. *See* Compl., ¶ 59. This means that Capital One's benefit from misusing the forfeitures was more than an "incidental benefit" and were not "used to pay benefits" in the manner prescribed by the governing Plan document. MTD at 23-24. Hence, the participants were "entitled" to have the forfeitures used to reduce their administrative costs before Capital One diverted the assets from the Plan trust for the purpose of saving the company money. MTD at 24. Plaintiffs, again, do not seek to advance a theory that "could be lodged against every retirement plan." MTD at 24. Plaintiffs narrowly allege that Defendants committed breaches based on the "context-specific" facts of this Plan. *Hughes*, 142 S. Ct. at 740.

### G.    Plaintiffs Plausibly Allege their Duty to Monitor Claims

Capital One as a named fiduciary, and acting through its Board of Directors, appointed the Committee to administer the Plan. *See* Compl., ¶¶ 10, 24, (citing Plan Doc. at 97). Under ERISA, "[t]he appointing fiduciary, however, continues to have a fiduciary duty to monitor the activities of its appointees." *Pessin*, 112 F.4th t 143 (referencing §§ 1104(a)(1), 1105(a), (c)). Plaintiffs' "failure to monitor claim is a derivative claim" of Plaintiffs' plausibly alleged "underlying breach[es]." *Id.* Thus, Plaintiffs' Duty to Monitor Claim is also sufficiently alleged.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss Plaintiffs' Complaint, or in the alternative grant Plaintiffs leave to amend.

Dated:  January 27, 2025                    Respectfully submitted,

**CAPOZZI ADLER, P.C.**

/s/ *Mark K. Gyandoh, Esq.*
Mark K. Gyandoh, Esquire
PA Attorney ID #88587
James A. Maro, Esquire
PA Attorney ID #86420
(*Admissions Pro Hac Vice to be Requested*)
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 232-3080
Email: markg@capozziadler.com
        jamesm@capozziadler.com

*Counsel for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 27 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: _<u>ls/Mark K. Gyandoh</u>_

Mark K. Gyandoh, Esq.

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that this brief complies with Local Rule 7.1(c) and that this brief contains 8,429 words.

By: _<u>/s/Mark K. Gyandoh</u>_
Mark K. Gyandoh, Esq.